WILLIAM F. LAING v. EDWARD NELSON.

FILED APRIL 17, 1894.     No. 4752.

1. **Slander:** EVIDENCE. In an action for slander, the occasion of the publication making the case one of qualified privilege, evidence of the falsity of the charges imputed is admissible on the part of the plaintiff as tending to prove malice, although such evidence is not in itself sufficient for that purpose.

2. ———: ———. In an action for slander, where portions of the language used are actionable *per se*, it is not erroneous to permit the plaintiff to testify that the publications complained of caused him mental anxiety and suffering, no testimony having been admitted as to details or as to the amount of damages.

3. ———: INSTRUCTIONS. A party cannot be heard to complain because the court did not specifically charge the jury that the burden of proof upon a particular issue was upon the adverse party, where the instructions given did not state or imply the contrary, and where the party complaining did not himself request any instruction upon the subject.

4. Certain evidence examined, and *held* to be properly admitted.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

See opinion for a statement of the case.

*John L. Webster*, for plaintiff in error:

The court erred in permitting the plaintiff Nelson to testify to the falsity of the slanderous charges alleged to have been made concerning him by the defendant Laing. (Cooley, Torts, p. 207; *Greenwood v. Cobbey*, 26 Neb., 449; *Briggs v. Garrett*, 111 Pa. St., 414; *State v. Balch*, 3 Kan., 465; *Rearick v. Wilcox*, 81 Ill., 77; *Pennington v. Meeks*, 46 Mo., 217; *Lick v. Owen*, 47 Cal., 252; *Bergmann v. Jones*, 94 N. Y., 51; *Bacon v. Michigan C. R. Co.*, 66 Mich., 166; *Grace v. Dempsey*, 75 Wis., 321; *Porter v. Batkins*, 59 Pa. St., 484; *Huson v. Dale*, 19 Mich., 17; *Donaghue v. Gaffy*, 53 Conn., 43.)

The court erred in permitting the plaintiff to testify that he was caused anxiety and suffering. (*Prettyman v. Shockley*, 4 Har. [Del.], 112; *Lucas v. Flinn*, 35 Ia., 9; *Artieta v. Artieta*, 15 La. Ann., 48; *Porter v. Hughey*, 2 Bibb [Ky.], 232; *Sturgencgger v. Taylor*, 2 Brev. [S. Car.], 7; *Ward v. Weeks*, 7 Bing. [Eng.], 211; *Hopwood v. Thorn*, 8 C. B. [Eng.], 293; *Boldt v. Budwig*, 19 Neb., 744; *Terwilliger v. Wands*, 17 N. Y., 59; *Wilson v. Gort*, 17 N.

Y., 442; *Bassell v. Elmore*, 48 N. Y., 563; *Pettibone v. Simpson*, 66 Barb. [N. Y.], 492; *Cook v. Cook*, 100 Mass., 194.)

The court erred in instructing the jury that the burden of proof was on the defendant to prove good faith in making the charges. (*Bacon v. Michigan C. R. Co.*, 66 Mich., 172; *Chaffin v. Lynch*, 84 Va., 886.)

*Cowin & McHugh, contra:*

The testimony upon the question of malice was proper. Evidence of the falsity of the charges was properly admitted to prove malice. (*Lewis v. Few*, 5 Johns. [N. Y.], 1; *Edwards v. Chandler*, 14 Mich., 472; *McCleneghan v. Reid*, 34 Neb., 472; *Gribble v. Pioneer Press Co.*, 25 N. W. Rep. [Minn.], 710; *Prime v. Eastwood*, 45 Ia., 640; *Flanders v. Groff*, 25 Hun [N. Y.], 553; Newell, Defamation, Slander & Libel, 337; Odgers, Libel & Slander, 280.)

The testimony of the plaintiff that he was caused anxiety and suffering was admissible. (*Craker v. Chicago & N. R. Co.*, 36 Wis., 657.)

IRVINE, C.

The defendant in error sued the plaintiff in error for slander. The language charged, omitting the innuendoes, is as follows: "He (Nelson) is an unworthy, dishonest man, and a villain. He is a criminal. He is a forger, a perjurer, and an outlaw. He is a dishonest scoundrel. He has committed crimes which should put him in the penitentiary, and he has only narrowly escaped the penitentiary several times. I have saved him from going to the penitentiary, when the officers were at the door of his house to arrest him, by paying a certain amount of money to the party causing the arrest." The defendant admitted saying that the plaintiff was an unworthy, dishonest man, but denied the other language. The defend-

ant further averred, in substance, that at the time the language was spoken concerning the plaintiff the plaintiff was a candidate for the office of postmaster; that whatever defendant said concerning him was spoken only to persons receiving their mail at the post-office referred to, and was spoken for the purpose of guiding them in reference to signing petitions and remonstrances to be used in connection with the appointment of a postmaster; that the words were spoken in good faith, in the belief, based upon reasonable grounds, that they were true, and that the defendant had not been actuated by malice. There was a verdict and judgment for the plaintiff. The case was tried throughout upon the theory that it was one of qualified privilege, and in the argument here the plaintiff concedes that the case was of that character. It must, therefore, be treated in that light.

1. The first error argued relates to the admission of the testimony of the plaintiff below going to the falsity of the charges imputed to him by the words proved. This evidence begins as follows:

Q. Did you ever commit any crime?

A. Not that I know of; never.

Q. Did you ever do any act that under the laws of this or any other state would entitle you to be sent to the penitentiary?

A. No, sir; I did not.

Q. In June, 1889, or before that year, were you an unworthy and dishonest man and a villain?

A. Not that I know of; no, sir.

Q. Were you, during the same time, a criminal?

A. No, sir.

Q. Were you at that time, or before or since, a forger?

A. No, sir.

Continuing this line of examination plaintiff's counsel followed through the whole of the slanderous language charged, and by similar questions drew from the plaint-

iff general answers negativing each of the charges. All this testimony was objected to, one class of objections going to the form of the questions, the other to their substance. If the testimony was admissible in substance, we do not think it was reversible error to admit it in the form in which it was adduced. The charges were general in their nature. If it was proper to prove their falsity, this could only be done by a resort to questions general in their nature and necessarily somewhat leading. It is in the discretion of the trial judge to determine whether a question is objectionable as leading, and his action thereon will not be ground of reversal, except for abuse of discretion. (*Obernalte v. Edgar*, 28 Neb., 70.) The impossibility, in view of the general charges made, of negativing them by proof of specific facts, justified the trial court in permitting the questions to be put directly and in a general form. It is true that some of these questions, such as whether the plaintiff was a villain, and whether he had done anything which should send him to the penitentiary, were so very broad and indefinite in their nature that the trial court probably should not have permitted the questions to be answered. They necessarily left a good deal to the judgment or inference of the witness as to what acts would justify such charges, and the method of examination was for that reason objectionable; but the very generality and indefiniteness of the language renders it impossible for us to see how the defendant could have been prejudiced by the testimony. A defendant may testify directly and generally that a conveyance made by him was not made with an intent to defraud. (*Campbell v. Holland*, 22 Neb., 587.) So the defendant in an action for malicious prosecution may testify that he did not make the complaint maliciously. (*Jonasen v. Kennedy*, 39 Neb., 313.) General testimony of this character is admissible to rebut equally general charges made against the person offering it, and while the court might properly require some of these questions to be put

more specifically, we do not think that the defendant was prejudiced by his failure to do so.

The most serious question arises upon the objections which go to the substance of this testimony. The truth of the charges was not pleaded in justification. The defendant relied upon the occasion of his making the charges and upon absence of malice. The question presented is, therefore, whether in an action for slander, the circumstances of the publication presenting a case of qualified privilege, the truth not being pleaded in defense, but privilege and good faith being pleaded, the falsity of the charges may be affirmatively shown to establish malice.

In *McCleneghan v. Reid*, 34 Neb., 472, it was said: "To show malice the plaintiff introduced proof tending to show the falsity of the charge, and that the defendant below had, at other times than those charged in the petition, uttered the words claimed to be slanderous. Such proof is admissible to show the *quo animo.*" In that case there was matter in the answer which amounted to a plea of justification, and the order of proof was declared to be in the discretion of the trial court, and a judgment not subject to reversal upon that ground, except for abuse of discretion. While the language used is significant in its bearing upon this case, the condition of the issues forbids its being accepted as authority upon the point here presented. We must, therefore, examine the question further.

Neither the opinions of text-writers nor the decisions of courts afford any very satisfactory test. One writer says: "The mere fact that the words are now proved or admitted to be false is no evidence of malice unless evidence be also given by the plaintiff to show that the defendant knew they were false at the time of publication. * * * As a general rule, therefore, the plaintiff cannot give any evidence as to the falsity of the charge unless a justification be pleaded, for such evidence is no proof of malice and the truth of the charge is not in issue." (Odgers, Libel & Slander, 274.)

Another writer says: "Where the defamatory words are
spoken on a privileged occasion, the mere proof that they are
false, without evidence that they are false to the defendant's
knowledge, will not entitle the plaintiff to have the ques-
tion of malice left to the jury." (Starkie, Slander & Libel,
581.)  Another says: "It is said that falsehood may be
evidence of malice; but the mere falsity of a publication,
without its being shown that the publisher knew it to be
false, is not *per se* evidence of malice." (Townshend, Slan-
der & Libel, 389.)  The general inference from these state-
ments would be that evidence of falsity of the charge is
admissible when coupled with evidence tending to show
the defendant's knowledge of its falsity.  The authori-
ties tend to bear out this statement.  Thus, in *Foun-
tain v. Boodle*, 3 Q. B. [Eng.], 5, the libel counted upon
was contained in an answer to inquiries in regard to the
competency of a servant, and the whole opinion turns upon
the sufficiency of the evidence of defendant's knowledge of
the falsity of the statements made.  So it has been held
that in the absence of a plea of justification evidence tend-
ing to prove the truth of the charges may be introduced
to rebut evidence of malice.  (*Remington v. Congdon*, 2
Pick. [Mass.], 310; *Bradley v. Heath*, 12 Pick. [Mass.],
163.)  The contrary, however, was held in *Fero v. Ruscoe*,
4 N. Y., 162.

In *Child v. Affleck*, 9 B. & C. [Eng.], 403, there is an
intimation that in a case of qualified privilege evidence of
the falsity of the charge is proper.  The court said: "If,
indeed, the plaintiff had distinctly proved the falsehood
of the statement the case would have assumed a different
shape, but according to the case proved the nonsuit was
right."  In *Fairman v. Ives*, 5 B. & Ald. [Eng.], 642, it is
said: "If the communication be made maliciously the case
would be otherwise, and the falsehood of the fact stated
might, in some cases, be evidence of malice."  In *Blagg
v. Sturt*, 10 Q. B. [Eng.], 899, Chief Justice Denman

said: "We are also of opinion that proof of falsehood in a part of the statement is evidence for the jury, to renew the presumption of malice where the occasion of the publication has been evidence to rebut it." In *Edwards v. Chandler*, 14 Mich., 471, Campbell, J., said : "Where a communication is privileged, the plaintiff cannot recover without proving affirmatively not only the falsehood of its contents, but also that it was published with express malice. Unless he can prove both of these points he must fail. The falsehood being a necessary part of the case to be made out by the plaintiff, the truth is but a contradiction of that case, and may be made out under the general issue, therefore, without resort to a special plea or notice. Upon this question there seems to be no conflict of authorities." It would seem that this last case goes too far in holding that the plaintiff, in order to recover, must necessarily prove the falsity of the charge. The privilege arising from the occasion of the publication rebuts the presumption of malice, but we do not think that it so rebuts the presumption of innocence of slanderous charges that they are to be taken as true because made under circumstances of privilege. The case is, however, authority in line with the English cases cited for holding that evidence of falsity is admissible.

Upon a review of the decisions we think the proper rule to be that while the plaintiff might rely upon the presumption of falsity of the charges made against him, he is not required to do so, but may introduce affirmative evidence of such falsity in cases where malice must be expressly shown, as a step in the proof of malice; but the falsity of the charges is not in itself sufficient to establish malice, and only becomes sufficient when coupled with evidence tending to show that the plaintiff made the charges knowing them to be false, or with other evidence tending to show malice. The objections here made, except as to the form of the questions, were directed simply in general terms to

its competency. We think it was competent in the manner stated, and that this assignment of error was not well taken.

2. It is next urged that the court erred in admitting certain testimony of the witness Russell. The defendant, to show a reasonable ground for the charges affecting plaintiff's honesty, relied largely upon evidence that the plaintiff had mortgaged to defendant horses in plaintiff's possession but belonging to one McLaughlin. Russell's attention was called to a church trial in 1888 or 1889, and the following question was asked: "In the conference, or trial, or whatever it was that was held there, did Dr. McLaughlin, who is a witness on the stand here, say that the team of horses referred to in this mortgage to Mr. Laing wasn't his property and they didn't belong to him, but that they belonged to Nelson, but that he thought Nelson ought not to have mortgaged them without speaking to him about it?" The question was answered in the affirmative. The objection made to it was that it was not proper rebuttal testimony, because it was not shown that there was no record of the evidence, and because no proper foundation had been laid. It was proper in rebuttal, if there was a proper foundation for it, for the purpose of impeaching McLaughlin's evidence offered by defendant. The objection that it could not be shown by parol is equally untenable and is not now urged, and we think counsel have overlooked a portion of the cross-examination of McLaughlin where the foundation was laid. McLaughlin's attention was called to this church trial, and this question asked:

Q. At that time, in Waterloo, and at that investigation, didn't you make the statement in the presence of a large number of persons?

A. No, sir; not a large number of persons.

Q. Well, a small number of persons, then. Didn't you make the statement to a small number of persons that Nelson bought these horses, and that they were his horses, and

that you never claimed that they were your horses, but you thought Nelson ought not to have mortgaged them because they were not paid for, or that in substance?

A. No, sir; not any such statement. I made just such a statement as I give here in regard to the horses.

While this is not the precise language of the question put to Russell, it is the same in substance, and was a sufficient foundation for the impeaching testimony.

3. The following question was asked the plaintiff: "You may state if, in July, after Mr. Laing had made these charges against you to which you have heard the witness testify this morning, and learned that it was generally talked about in the community, whether it caused you any anxiety or any suffering?" Objected to, as incompetent, irrelevant, and improper. Objection overruled. Plaintiff excepts. Answer: "Yes, sir; it did." There was nothing further upon this subject, and the admission of this evidence is assigned as error. The argument is that as to such language as was not actionable *per se*, mental suffering, without other damage, is not such a special damage as will alone justify a recovery; and that as to such language as was actionable *per se*, no evidence at all was admissible to show damages. The objection, as we have seen, was general in its nature, and if the testimony was competent and relevant for any purpose it was admissible. The question as to the right to recover for mental suffering because of words not actionable *per se* may, therefore, be dismissed from our inquiry.

The case of *Boldt v. Budwig*, 19 Neb., 739, is relied upon in support of the proposition that the evidence was not admissible to support the allegations of the language actionable *per se*. The court was there considering an instruction permitting in such a case the jury to consider mental suffering without any positive evidence thereof, and the language used must be taken in connection with the question under consideration. The language is as follows:

"The instructions are clearly right so far as the question of the measure of damages is concerned. The words charged in the petition are actionable *per se;* hence there not only need be no proof of special damages, but such proof would be inadmissible. No witness could swear to the mental suffering of the female plaintiff. The jury must decide upon that from the defamatory words themselves, and the sex, age, and condition of the plaintiff. So also as to the question of future damage. No human being could say that the plaintiff's life would be prolonged for a single day after the trial, and yet the jury should consider the damage to her character as well as her mental suffering caused thereby during a life to be prolonged for the usual period of expectation according to ordinary experience, and not according to the opinion or testimony of witnesses. So the objection that there was no evidence before the jury of the mental suffering of the plaintiff, or of future damage, and hence that the instructions as to those matters were not supported by the evidence, is not well taken." By this it was not meant that in a case where general damages are allowed no evidence may be introduced of the facts from which such damages arise. It is clear from the language used that in that case evidence of the sex, age, and condition of the plaintiff was deemed admissible. What was meant there was that witnesses could not be called to prove the *quantum* of damages, but that the amount of damage must be left to the determination of the jury under the circumstances of the case. Neither this plaintiff nor any other witness could give an opinion as to the amount which he should recover because of mental suffering, but all that was proved was the fact that anxiety was caused. It is true the law would probably presume this; but if so, this single question, answered as it was, could not have been prejudicial. We think that it was proper, and that the existence of circumstances from which the law implies damages may be shown, although the case be one where dam-

ages are implied by law from those circumstances, and evidence as to the amount of damages would be improper.

4. The only other point urged relates to the instructions, and the argument is addressed to the first instruction given by the court of its own motion. This instruction is as follows: "That the burden of proof is upon the plaintiff to satisfy you by a preponderance of the testimony of the speaking by the defendant of the words, or some of them, charged in the petition as slanderous; and if you find from the testimony that such slanderous words, or some of them, were spoken by the defendant, you will next inquire whether or not they were spoken under such circumstances as rendered them privileged, within the designation given by the law to privileged communications." It is said that this instruction, especially when taken with the others in the case, casts upon the defendant the burden of disproving malice. We do not think so. The instruction quoted referred to only a portion of the case. The following instruction expressly told the jury that "the law presumes malice from the use of slanderous words unless they were used under such circumstances as rendered them privileged." This was quite a distinct instruction that malice was not presumed in cases of privilege, and other instructions fully covered the question of privilege.

In a number of instructions given at the request of the plaintiff the issue as to malice was placed affirmatively, so that the jury could not very well infer that the burden was on the defendant. As an illustration we quote the nineteenth: "You are further instructed that if you believe from the evidence that the defendant, during the month of June, A. D. 1890, spoke of and concerning the plaintiff the words herein sued upon, then you have a right to consider all the circumstances in evidence to determine the question whether such words were spoken by the defendant maliciously; and if you believe, from all the evidence and circumstances in evidence in this case, that the defend-

ant did speak such words of and concerning said plaintiff maliciously, and with a desire and intent to injure the plaintiff, then and in that case your verdict should be in favor of the plaintiff. Modified by adding at the close the words: 'Provided you shall further believe from the evidence that such words were untrue and that the defendant had not reasonable and probable cause to believe them to be true.'"

The defendant requested twenty-five instructions, twenty-four of which were given. The issue was in those instructions stated to the jury substantially as in those requested by the plaintiff. The single instruction refused related to an entirely different branch of the case. Upon an examination of all the instructions we cannot find that the court in any place said or implied that the burden upon the issue of malice was upon the defendant. The most that can be urged is that the jury was not distinctly told that it was upon the plaintiff; but if the defendant had desired such an instruction he should have requested it.

JUDGMENT AFFIRMED.