Stella W. Mills, Appellee, v. Bert Flynn, Appellant.

**Slander and libel:** PLEADINGS: AMENDMENT: CONTINUANCE. It is always permissible to amend a pleading to make it conform to the proof; and where the original pleading fully advised defendant of the nature of an alleged slander, an amendment making but a slight change in the language complained of, without altering its sense, was not ground for continuance.

**Same:** EVIDENCE. In an action for slander on the ground that defendant had charged plaintiff with being afflicted with a loathsome disease, it was proper for plaintiff, in her main case, to show that she had never been thus afflicted, although defendant did not justify by pleading the truth of the charge.

**Same.** The admission of evidence by plaintiff as to the number and ages of her children, and that they were healthy, on the promise of counsel to make it competent by medical testimony, was not a matter of which defendant could complain, where the same was stricken from the record because of failure to produce the medical evidence.

**Same.** Under proper allegations in an action for slander the plaintiff may show, in support of special damages, that she suffered mental pain, humiliation and disgrace from the breaking up of church and social relations, as a result of the alleged slander; as bearing on its effect on her own personal feelings, but not upon the feelings of others toward her.

**Same.** The plaintiff in a slander action can not show the effect of alleged slanderous words by detailing specific instances, but may

show the effect of slanderous reports without strict proof connecting the same with the slander of the defendant.

**Same:** INSTRUCTIONS. The instruction in this case that the jury should not consider the attitude toward plaintiff taken by members of societies to which she belonged, because their attitude was not sufficiently connected with the alleged slanderous statements of defendant, cured any error in the admission of evidence of rumors that plaintiff was afflicted with an incurable disease, with which defendant may not have been connected.

**Same:** MITIGATION OF DAMAGES: EVIDENCE. Where there was evidence that defendant knew of the falsity of rumors to the effect that plaintiff was afflicted with an incurable disease, prior to the time he made a like charge, and he made no claim that he merely repeated such rumors, and there was no evidence that he did so without malice and believing them to be true, evidence that certain persons had stated that plaintiff was so afflicted was not admissible in mitigation of damages.

**Same.** The defendant in a slander action can only show in mitigation such rumors as were in circulation before his statements were made; under no circumstances can he show subsequent rumors.

**Same:** MITIGATION: INSTRUCTION. Where the defendant made no request for an instruction on the subject of mitigation, and made no complaint that one was not given by the court, the matter will not be considered on appeal.

**Same:** DAMAGES: INSTRUCTIONS. The defendant in an action for slander can not be held liable for a repetition by others of slanderous statements made by him, unless he made them with the intention and expectation that they would be repeated, or under such circumstances that it would be likely that the hearer would repeat the same in the course of duty; and an instruction permitting the jury to consider a repetition of his slanderous statements as bearing on the question of plaintiff's damage, unless made under such circumstances, is erroneous.

**Same.** The defendant's pecuniary circumstances and standing in society are matters which may be considered in determining the damages which plaintiff in a slander action ought to recover.

*Appeal from Washington District Court.*—HON. BYRON W. PRESTON, Judge.

MONDAY, OCTOBER 21, 1912.

ACTION for slander.  Defendant denied the alleged slander and pleaded certain facts in mitigation, which need not be here set forth.  On the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $4,000, and defendant appeals.— *Reversed.*

*Marsh W. Bailey,* and *Wade, Dutcher & Davis,* for appellant.

*Ranck & Bradley,* and *Eicher & Livingston,* for appellee.

DEEMER, J.—Defendant is a retired farmer living at the time of trial at Riverside, Iowa.  He was the owner of a farm near said town, and at the time it is claimed the alleged slanderous words were spoken plaintiff and her husband were his tenants, and as such were living upon the farm.  It is claimed in the petition, which is in three counts, that during the years 1908 and 1909 the defendant spoke of and concerning the plaintiff the following false and slanderous words:

Mrs. Mills will never get any better, as she has a disease which is incurable, and which she has caught from her husband, Frank Mills, and he caught it somewhere else.  Mrs. Mills is afflicted with the gonorrhœa and syphilis, and you know what that is.  She will never get well.

Mrs. Mills will never get any better as long as she lives with that man; she will never get well; she has a bad disorder that she caught from him, and he isn't fit for to have a woman.  She has a venereal disease known as the syphilis and clap.   .   .   .

The Mills have the syphilis.  They have it bad, and are in bad shape.  They will not get well.

These separate statements being found in the respective counts of the petition.  At the close of plaintiff's testimony she was permitted, over defendant's objections, to

amend the first count of her petition to conform to the proof, and in this she alleged that, in addition to the alleged slanderous statement made by defendant as charged in the first count, he said: "Mrs. Mills has the pox; she will never be any better. She is rotten with the pox."

Defendant denied the alleged statements, and pleaded that it was currently reported in the neighborhood where plaintiff lived that she and her husband. had syphilis, or some other venereal disease; that because of their occupancy of his farm he was interested in knowing the facts, and that he made inquiries concerning the matter and heard these various rumors and reports; that he did not repeat the same, save as he was making inquiries with reference to the truth thereof; and that he had no other motive than to ascertain their truth. These facts were pleaded both in justification and in mitigation. Upon these issues the case was tried, with the result above indicated. Something like fifty-two errors are assigned; but, as the argument is confined to something like nine principal propositions, we shall confine our attention to the points there made.

I. It is claimed that the court was in error in permitting plaintiff to file the amendment to her petition to conform the pleadings to the proof, and that in any event the trial court erred in not granting defendant a continuance to meet the issues tendered thereby. Neither proposition is tenable. It is always permissible in such cases for one to amend in order to make the pleadings conform to the proof, and, as the testimony was in the record and did not depart substantially from the charge as originally made, there was no error in permitting the amendment. The amendment did no more than slightly change the language said to have been used by defendant to Tobin and others, and gave the date as in February, instead of January. Defendant was fully advised by the original pleading as to the nature of the slander and as to whom uttered, and no

1. SLANDER AND LIBEL: pleadings: amendment: continuance.

reason is shown why a continuance, should have been granted. The only showing is that counsel never had heard it claimed that defendant said plaintiff had the pock, and that he had no opportunity to examine as to the nature of the disease, or whether or not plaintiff was afflicted with it, and had no opportunity to prepare for trial on that issue. He surely was advised of the claim that defendant had said plaintiff had syphilis, gonorrhœa, and clap, or other venereal disease, and assuming, as we must, his knowledge of the use of terms, it must be assumed that he knew that pock is but another name for syphilis, or what has been called "French or Spanish pox." Webster's International, "Pock." It is well known that among a certain class of people "pock" is a synonym of "syphilis." See Webster's International, word "syphilis." Surely there was no reason for a continuance.

II. Over defendant's objections, plaintiff was permitted to prove as a part of her main case that she never had any of the diseases with which she was charged. It 2. SAME: is true that defendant did not justify by evidence. pleading the truth of the charges, and it is also true that plaintiff was not required to negative the truth; for the law presumes that the party charged was not so afflicted. But we have held in several cases that it is not error for plaintiff to prove that the charge was untrue. *Locke v. Chronicle Co.*, 107 Iowa, 391; *Moffitt v. Chronicle Co.*, 107 Iowa, 407; *Berger v. Publishing Co.*, 132 Iowa, 293.

III. Plaintiff was permitted, over objections by defendant's counsel, to testify as to the number and ages of her children, and that they were present in court, and were 3. SAME. each and all healthy. This was done under promise of counsel to make the testimony competent by medical evidence. This they failed to do, and on motion of defendant's counsel the testimony was stricken

from the record for failure to furnish this proof. Surely there was no error here of which defendant may complain.

IV. In her petition plaintiff alleged that she suffered special damages as follows: "That by reason of the speaking of the said false, malicious, scandalous, and de-defamatory words, well knowing at said time that the same were false, the plaintiff has been greatly injured in her good name and character, deprived of social intercourse among her neighbors and in the community in which she resides, brought into public scandal and disgrace, suffered much mental pain and anguish, and sustained a severe nervous shock upon learning of the said false statement made by the said defendant. That by reason thereof the plaintiff has sustained damages in the sum of $2,500, no part of which has been paid." She offered testimony in support of these allegations, and was permitted, over objections of defendant, to testify to the breaking up of her church relations and to a general social ostracism. It is said that this testimony was not admissible, because the results were in no manner traced to defendant. It is true, of course, that defendant is not chargeable with slanders or rumors uttered by others, and for which he was in no way responsible. *Schaffhauser v. Hemmer,* 152 Iowa, 204; *Olmsted v. Brown,* 12 Barb. (N. Y.) 657; *Kersting v. White,* 107 Mo. App. 265 (80 S. W. 730).

4. SAME.

But it is also true that testimony as to mental pain and suffering, humiliation, and disgrace are all proper elements of damage, and may be shown under proper allegations. *Davis v. Mohn,* 145 Iowa, 417. The court admitted the testimony for this definite purpose: "By the Court: It is admitted for the purpose as indicated by counsel for which they offer it, to wit, as it may have a bearing, if at all, upon the feelings of the plaintiff, and not upon the feelings of the others toward her." The examination of the witness continued in this manner:

Q. Did you at any time learn that the defendant had reported in the vicinity of Riverside, in which you then resided, that you had syphilis? A. I did. Q. About when did you hear this? A. It was the 1st of September two years ago. It will be two years next September. That would be the 1st of September, 1909. It was shortly after I heard it. Q. How did the information of Mr. Flynn's publication of these charges affect you? A. I can hardly express it. It was so terrible. It is a terrible thing to be accused of. I can't tell you how I felt. I walked the floor at night; couldn't eat; couldn't sleep; and I couldn't do anything. I felt that I must be vindicated. I felt that I should die, and I felt I couldn't die; for if I would die I would leave this on my children, and if I would it would come back. I didn't know what to do. Q. How did it affect your emotions as to crying or otherwise? A. I should think it did. I had a complete nervous breakdown. I suppose it was foolish. Q. What effect did this have upon you when you met your friends and neighbors afterwards? A. I didn't meet them very often, because I wouldn't go any place. I felt that I was watched, and I couldn't go feeling right and comfortable.

Upon cross-examination, she was asked regarding the treatment and conduct of certain parties toward her and as to what they said; and as to this the defendant, of course, can not complain. Finally, the following record was made:

Defendant now moves the court to strike from the records all the testimony tending to show any ill treatment towards the plaintiff, or any shunning of the plaintiff by the members of any of the lodges or societies or clubs to which the evidence shows she belonged, for the reason that there is no testimony tending to show that the defendant is in any way responsible for such treatment. Second. The defendant moves to strike from the record all the evidence tending to prove ill treatment of plaintiff by any person or persons other than the witness Tobin and the witness Herring, for the reason that there is no evidence in the record which would justify the finding that the defendant is in any way responsible for such treatment. The defendant moves to strike from the record all the evidence of rumors of the

report that the plaintiff was afflicted with the disease or diseases alleged in the petition, for the reason there is no evidence that would justify a finding that the defendant is in any way responsible therefor. By the Court: My idea that the record is in such shape that the motion can not be sustained. The court sustained the objection to plaintiff's questions in reference to the treatment by the church people, etc.; but some of the testimony in reference to these matters was brought out on cross-examination—matters, perhaps, having a bearing, as the court supposed, at least at that time, on other issues and without objection on the part of the plaintiff; and, perhaps, some of the matters at which the motion strikes were not responsive and volunteered by the witness, and for those reasons the court's idea is that the record is in such shape that the court can not now and ought not now to sustain it, but those matters will be controlled by the court in an instruction to the jury in reference to these matters.

The promise made by the court to instruct will be dealt with in another paragraph of the opinion. That plaintiff may show her mental suffering is well settled by authority. *Nott v. Stoddard,* 38 Vt. 25 (88 Am. Dec. 633); *Laing v. Nelson,* 40 Neb. 252 (58 N. W. 846); *O'Toole v. Publishing Co.,* 179 Pa. 271 (36 Atl. 288); *Schulze v. Jalonick,* 14 Tex. Civ. App. 656 (38 S. W. 264); *Schomberg v. Walker,* 132 Cal. 224 (64 Pac. 290); *Terwilliger v. Wands,* 17 N. Y. 54 (72 Am. Dec. 420); *Chesley v. Thompson,* 137 Mass. 136.

Plaintiff, no doubt, should not be permitted to detail specific instances, but undoubtedly may show the effect of the reports without strict proof connecting the current report with the slander of the defendant; the fact of such connection being for a jury, and not for the court. *Rice v. Cottrel,* 5 R. I. 340; *Moor v. Stevenson,* 27 Conn. 14.

5. SAME.

Aside from this, however, the trial court gave the following instruction: "(13) You are instructed that in arriving at the amount of damages, if any, against the de-

fendant, you will not take into consideration the attitude
toward the plaintiff by the members of the
different lodges or societies to which plain-
tiff belonged, for the reason that the evidence has not con-
nected such matters with the alleged slanders claimed by
plaintiff to have been spoken by the defendant." This
cured any errors in the admission of the testimony and
properly limited the effect thereof.

6. SAME:
instructions.

V.  Defendant made the following offer of testimony:

By Counsel for Defendant: Defendant offers to prove
by the witness Maud Carr that in August, 1908, she went
to the State University Hospital at Iowa City and remained
there as a nurse until October, 1908; that
on the evening of the first day when she
went there, while at the nurses' home, when
it became known by the nurses that the wit-
ness Maud Carr was from Riverside, they asked her if she
knew Mrs. Mills, and she said that she knew her; that the
nurse then stated to her that Mrs. Mills had been in the
hospital for treatment; that she was afflicted with the syphi-
lis; that the said statement was made by the nurse in the
presence of the witness and three or four nurses; that there
were at that time more than twenty nurses in the hospital;
that thereafter the witness Maud Carr, in the month of
October, went down to Riverside, and there heard the ru-
mors from people in Riverside, in said month of October,
that the plaintiff was afflicted with a venereal disease or
syphilis, and was asked by witness whether or not such
statements were true, and the witness Maud Carr stated to
them that she had been told by the nurses in the University
Hospital that they were true; that said witness was called
to the office of Dr. Blythe, who stated to her that it had
been reported to him that she was circulating the report
that the plaintiff had a venereal disease.

7. SAME:
mitigation
of damages:
evidence.

The following record was made on this offer:

Plaintiff objects to the offer as immaterial, irrelevant,
incompetent, and hearsay. Counsel for defendants say this
offer is not made with reference to the impeaching question
to Dr. Blythe. By the Court: This testimony might be

admissible, perhaps, on one theory, if these rumors were communicated to the defendant prior to the alleged speaking of the words in the petition, on the question of his good faith in some other matters; but counsel for defendant have stated in open court that they do not rely upon the claim in this case on the question of privilege, and the court considers such issues thereby withdrawn and relies upon such statement, and, there being no offer or nothing in the offer by which the defendant expects to make the connection above referred to, the offer is denied. And a further reason for denying the testimony is that it is not claimed by defendant or shown in the offer that defendant knew of the rumor or report at the time of the alleged publication of the matters set up in the petition, or that defendant, in saying what he did, if he said anything, gave the rumor as his authority. Defendant excepts.

Another offer was made as follows:

Defendant offers to prove by witness Laura Godlove, a resident of Riverside, Iowa, residing there in 1908, that on August 10, 1908, she went to the University Hospital at Iowa City for an operation; that while there she was told, in the month of August, 1908, by the nurse in the hospital that the plaintiff was afflicted with the syphilis; that one of the nurses who told her was named Miss Shillar; that Miss Shillar told her that both Mr. Mills and Mrs. Mills were treated in that hospital for gonorrhœa; that Mrs. Godlove, upon inquiry after her return to Riverside, told various persons what she had heard at the hospital.

The record made here was as follows: "Plaintiff makes the same objection; same ruling. Defendant excepts."

The rulings are complained of. It is claimed that the testimony was admissible in mitigation of damages and to show want of malice on defendant's part. That there are cases so holding, we have no doubt. But the rule for this state, as announced in the cases, is as follows:

The defendant pleaded in mitigation of this charge, in substance, that there were a great many reports in the neighborhood where the plaintiff resided, which came to

defendant's knowledge, that the plaintiff was a woman of unchaste character, and that it had been reported to him that the plaintiff had been guilty of specific acts and conduct, which were set out, which tended to show that she was of unchaste character; and that he, without malice, repeated such reports. But it was not pleaded that the defendant gave his authority, or even stated that he had been so informed, when he spoke the words. We understand the rule to be that when the libel does not, on the face of it, purport to be derived from any one, but is stated as of the witness' own knowledge, then evidence is wholly inadmissible to show that it was copied from a newspaper, or communicated by a correspondent. Odgers, Lib. & Sland. 303. 'Particular acts or instances of misconduct can not be proved, nor rumors and reports, unless they are so general and prevalent that they have affected the general character.' 3 Suth. Dam. 679; *Forshee v. Abrams,* 2 Iowa, 571; *Fisher v. Tice,* 20 Iowa, 479; *Fountain v. West,* 23 Iowa, 9; *Marker v. Dunn,* 68 Iowa, 720.

Again, in *Hanners v. McClelland,* 74 Iowa, 318, we said: "Defendant was permitted to prove the general reputation of plaintiff for chastity. Did the court err in not permitting him to prove the alleged rumors or reports? Evidence to prove the acts themselves was not admissible, because they were not pleaded, if for no other reason. Code, section 2682. Defendant does not, in his answer, claim that he believed the alleged rumors to be true at the time in question, nor even that he knew of them. The only purpose of proving them would be to mitigate damages by rebutting presumptions of malice. But if defendant did not know of them, or, if knowing of them, he did not believe them to be true, they could not affect the question of malice, and therefore would have been improper and prejudicial. 1 Hil. Torts, 394, note, 403; *Pease v. Shippen,* 80 Pa. 513 (21 Am. Rep. 116); *Peterson v. Morgan,* 116 Mass. 352; *Lothrop v. Adams,* 133 Mass. 476 (43 Am. Rep. 528)." See, also, *Berger v. Publishing Co.,* 132 Iowa, 293; *Bearsley v. Bridgman,* 17 Iowa, 296; *Clif-*

*ton v. Lange,* 108 Iowa, 475; *Wallace v. Homestead Co.,* 117 Iowa, 356.

There is direct testimony in the case to the effect that defendant knew the alleged rumors were untrue long before he uttered them; and no claim is made that he was simply repeating the rumors he had heard. The alleged plea in mitigation is defective, and does not go to the extent claimed by appellant. *Bearsley v. Bridgman,* 17 Iowa, 296. It does not show a repetition without actual malice, does not give the author, or state that defendant believed the words to be true and uttered them without malice. The only mitigating circumstances pleaded are that there were rumors that plaintiff's husband was afflicted with the disease known as syphilis, or some other venereal disease, and that he simply made inquiries with reference thereto.

Again, it is previous, and not subsequent, rumors which defendant may show in any case. *Hinkle v. Davenport,* 38 Iowa, 355. According to the testimony, defend-

8. SAME.

ant started the reports before any of the witnesses whose testimony was offered were at the town of Riverside; and there is also testimony to the effect that he was told by plaintiff's physician that they were untrue.

VI. Failure of the court to instruct on the question of mitigation is one of the errors alleged. No request

9. SAME: mitigation: instructions.

for such an instruction was made by defendant, and no complaint of failure to give one was made in the trial court. It is too late to now present the matter. *Hall v. Manson,* 90 Iowa, 585.

VII. Nos. 10, 11, and 12 are complained of. They read as follows:

(10) You are further instructed in reference to the question of damages, in case you find for the plaintiff and award her damages, then, in fixing the amount thereof, you may take into consideration the mental suffering, if

any, produced as the proximate result of the defendant's

10. SAME: damages: instructions.

wrong complained of, if any. If, however, you find that such mental suffering was occasioned when and after she claims to have learned that defendant made the alleged slanderous statements complained of, and you find from the evidence that the defendant is not guilty of making the statements complained of in the petition, then you are instructed that under such circumstances the defendant would not be chargeable with such alleged mental suffering; nor would he be liable for any damages, if you so find that he is not guilty.

(11) If the jury believe from the evidence that the defendant is guilty of uttering the slanderous words charged in the petition, then they may take into consideration the

11. SAME.

pecuniary circumstances of the defendant and his position and influence in society, so far as these matters have been shown by the evidence, in estimating the amount of damages which the plaintiff ought to recover, if any. But in this connection you are instructed that it is proper for you to take into consideration the question as to whether or not it is necessarily true that a man possessed of property has, from that fact alone, the confidence and respect of the community in which he lives.

No. 12 reads as follows:

The defendant is liable, if at all, only for the injury to plaintiff, if any, occasioned by and as the proximate result of his own wrongful acts, if any, in the matters complained of. The fact, if you so find, that other persons than defendant made slanderous statements of and concerning plaintiff, similar to those alleged to have been made by defendant, this would not relieve defendant from the alleged slander published by him, if any, or for the natural consequences thereof. On the other hand, if persons other than defendant published of and concerning plaintiff similar slanderous statements, independently of defendant and not emanating from him, or by his said statements, if any, then defendant would not be liable therefor; and this is so as to such slanders, if any, and rumors thereof, if any, before or after the alleged slanderous statements made by defendant, if he did make them.

In this connection defendant's counsel asked the following instruction:

You are instructed that the defendant is liable, if at all, only for the damages plaintiff suffered, if any, by reason of the statements, if any, made by the defendant to witnesses Tobin and Herring, and he is not liable for damages, if any, resulting to the plaintiff by reason of a repetition of such statements, if any, by said witnesses Tobin and Herring, or any other person.

This was refused, and the only instructions which relate to the subject are those already quoted. These are said to be erroneous, because they do not sufficiently narrow defendant's responsibility for the damages suffered to the slander uttered by him, and these words, taken from the twelfth, are made a special target: "On the other hand, if persons other than defendant published of and concerning plaintiff similar slanderous statements, independently of defendant and not emanating from him, or by his said statements, if any, then defendant would not be liable therefor; and this is so as to such slanders, if any, and rumors thereof, if any, before or after the alleged slanderous statements made by defendant, if he did make them." The fair and, indeed, the only inference which a jury could draw from this instruction is that defendant would be liable for slanderous statements made by other persons, if such statements emanated from defendant or grew out of slanderous statements made by him. In other words, if a stranger heard defendant's slanderous statements and repeated them, or if, hearing of such statements made by defendant, he repeated them to others, defendant would be liable for such repetitions. That such was the thought of the trial court appears not only from the instruction given, but is further evidenced by its refusal to give the instruction asked. While there are a few cases supporting the rule of the instruction, the great preponderance of authority is the other way. And the reason for the doctrine, sus-

tained by the weight of authority, is that no one, as a general rule, has the right to repeat a slanderous statement heard by him, even if he gives the source of his authority. For such repetition the party making it is liable; and, if the party who starts it is also liable, there would be a double liability. An exception to the general doctrine exists where the original slander is made to one with the expectation that it be repeated, or under such circumstances that the hearer would be expected to repeat it in the course of duty; but the instant case does not fall within any of the exceptions known to the law. Whatever the rule in other jurisdictions, we are committed to doctrine sustained by the weight of authority. Thus, in *Prime v. Eastwood*, 45 Iowa, 640, we said:

Against the objection of defendant, the court permitted the plaintiff to prove that there was a rumor in the neighborhood in reference to plaintiff, and that defendant had claimed that plaintiff had some of his hogs, the court instructed the jury as follows: 'In determining the amount of damages to be given to the plaintiff, if he is entitled to recover, you may consider the extent of the publication, as how far known and how understood and believed in the community where known, so as to determine the extent of the injury to his reputation.' The words charged were spoken on different occasions to Porter, to Tilden, and to McCarthy; no one else being present. 'Every speaker is the publisher of what he speaks, and is solely liable therefor. That the words spoken have been previously published by another can neither relieve the subsequent speaker from his liability for the publication made by him, nor impose any liability on the previous publisher.' Townshend on Slander, sections 114, 202. See, also, *Terwilliger v. Wands*, 17 N. Y. 54, 58 (72 Am. Dec. 420); *Ward v. Weeks*, 7 Bing. 211; *Stevens v. Hartwell*, 11 Metc. (Mass.) 542. The true rule upon the subject, we think, is that recognized in *Terwilliger v. Wands, supra*, that, where there is no proof of the circumstances under which slanderous words are repeated by the parties who originally heard them, the general rule that a repetition

of slanderous words is wrongful applies, and damages which result from repeating them are a consequence of that wrong, and not a natural, immediate, and legal effect of the origi-. nal speaking by the defendant. The effect of the action of the court in receiving this evidence and in giving the above instruction was to hold the defendant liable for the extent to which the publication was known, and consequently for the repetition of the publication by others,. without reference to the circumstances under which the repetition was made. In this there was error.

Again, in *Zurawski v. Reichmann,* 116 Iowa, 388, we said:

The court received evidence that persons other than those in whose presence the words were spoken had heard of them and of the charge made; and this without any evidence tending to show a repetition of the language by the defendant, or the circumstances under which it was repeated. This was prejudicial error under the holding in *Prime v. Eastwood,* 45 Iowa, 643. The only purpose of this evidence was to increase the plaintiff's damages, and, if held competent, would mulct the defendant for the wrong of another. Odgers, Libel and Slander, 151.

These cases were followed in *Morse v. Printing Co.,* 124 Iowa, 707; *Bank v. Fritz,* 135 Iowa, 47; *Schaffhauser v. Hemmer,* 152 Iowa, 205. The leading authority on this subject outside this state is *Burt· v. Advertiser Co.,* 154 Mass. 238 (28 N. E. 1; 13 L. R. A. 97), to which reference is made. See, also, *Terwilliger v. Wands,* 17 N. Y. 57 (72 Am. Dec. 420). This general doctrine has been criticised on the theory, we suppose, that where one starts a slander he may reasonably expect that it will be repeated, and for such repetition reasonably to be anticipated he is liable. See Sutherland on Damages (2d Ed.) section 1222. But we are so firmly committed to· the general rule that it is now too late to change it. Indeed, were we to do so at this time, it would result in a reversal of the case because of the court's failure to admit the testimony of Maud Carr,

Laura Godlove, and others.   The reason for this being that, if defendant is to be held for repetitions of the slanderous statements, he should be allowed to show that others, without knowing of his statements, uttered the slander concerning the plaintiff, both before and after defendant had spoken the words charged.   In other words, he should have been permitted to show that he was not responsible for the reports or for the entire damage; that others were equally guilty with him.   The trial court was in error in giving the twelfth instruction, and this error was not cured by any other paragraph of the charge.

There is no doubt in our minds of the thought of the trial court in the giving of this twelfth instruction; but if in error here it is manifest that the matter was left in such a situation that a jury might fairly construe the charge as we have suggested, and, such being the record, the court should not have left the matter open to such a construction, but should have given the instruction asked by the defendant, or one covering the point in such a manner that defendant's responsibility might be clearly understood.   The testimony as to humiliation, social ostracism, and other damages to plaintiff was such as to call for just such an instruction as the defendant requested.

Instruction eleven seems to be correct.   *Bailey v. Bailey,* 94 Iowa, 606; *Herzman v. Oberfelder,* 54 Iowa, 85; *Karney v. Paisley,* 13 Iowa, 92.

For the error in giving the twelfth instruction and in refusing defendant's request, the judgment must be, and it is,—*Reversed.*