Wanda BROWN, Appellee,

v.

FIRST NATIONAL BANK OF MASON CITY, a bank corporation, Appellant.

No. 54579.

Supreme Court of Iowa.

Jan. 14, 1972.

548

Laird, Burington, Bovard & Heiny, Mason City, and Theodore G. Garfield, Ames, for appellant.

William Pappas, Mason City, and Floyd Ensign, Northwood, for appellee.

REES, Justice.

This is a law action by plaintiff, Wanda Brown, against defendant, First National Bank of Mason City, to recover for alleged libel by publication in *The Mason City Globe Gazette,* a newspaper of general circulation, of two news items regarding an investigation of shortages in the bank where plaintiff was employed as an assistant cashier. The news items were based on information obtained by the news editor of the newspaper from the president of the bank, and did not mention plaintiff by name. The case was tried to a jury, a verdict was returned in favor of plaintiff, judgment was rendered thereon, and defendant appeals. We affirm.

On September 3, 1966, Robert Zimmer, president of defendant First National Bank of Mason City, called a meeting of all officers and employees of the bank to inform them that over a period of time there had been mysterious disappearances of small amounts of money, and that the bank proposed to administer polygraph (lie detector) tests to all officers and employees on a voluntary basis to aid the investigation. Plaintiff, an employee of defendant bank since June 1, 1950, volunteered to submit herself to the polygraphic examination, and did so on October 8, 1966. At the conclusion of this examination the operator of the polygraph informed plaintiff she had

"not passed", and that something was bothering her. He suggested she use the weekend to think things over and on Monday tell him what it was that was on her mind.

On the following Monday, October 10, 1966, plaintiff informed a Mr. Miller, a vice president of the defendant bank, she had at one time mishandled the sum of two dollars (she had used a two dollar automobile title change fee to purchase stamps which she left at the bank), and that this may have been what was bothering her during the first examination. She then submitted to a second polygraph test, and was informed at the conclusion thereof she was not cooperating and something was still bothering her. Plaintiff maintained she had done nothing wrong, but that same afternoon she was told she had "broken her bond" and could not continue working at the bank without one. She was offered a third polygraph examination, but refused to submit to it. Plaintiff left the bank the same afternoon and never returned to work there again. Defendant claims plaintiff was never formally discharged, but admits that a letter was sent to her terminating her salary as of October 15, 1966. At the time the investigation was conducted, plaintiff was employed in the capacity of assistant cashier, and was 45 years of age.

During the polygraph examinations, plaintiff admitted the mishandling of the sum of two dollars, and also admitted she had at one time purchased a Pontiac automobile from a customer of the bank (which automobile had a retail value of $4900) for the sum of $3700, and that on one other occasion she had received a bottle of whisky as a gift from a customer of the bank.

No criminal charges were filed against plaintiff.

On October 12 and 13, 1966, the following articles appeared in *The Mason City Globe Gazette,* and were identified in the libel action as exhibits A and B:

### "FIRST NATIONAL FUNDS MISSING

"Funds of the First National Bank in an amount believed to be less than $5,000 were reported missing Wednesday by the bank president, Robert Zimmer.

"Zimmer said the bank's investigation is continuing. No charges have been filed.

"The funds have been disappearing in small amounts over a period of time, he said, and no customer accounts are involved.

"Zimmer's statement:

"'Over a period of time, a series of mysterious disappearances of small sums of cash prompted the First National Bank to have an investigation made to clear all innocent employes of any blame or involvement.

"Differences located to this date total less than $5,000. Indications are that there has been no tampering with accounts of customers, and the bank will not suffer any loss, as all sums are fully insured.' "

### "EXHIBIT 'A' "

### "FIRST NATIONAL PROBE CONTINUES

"Investigation of missing funds at the First National Bank of Mason City continued Thursday, but Robert Zimmer, president of the bank, said he expected no further developments for some time.

"Some employes of the bank have not been working this week because the bonding company withdrew their bonds, but Zimmer declined to give names or discuss how many were involved.

"He is notifying the regional Comptroller of the Currency in Kansas City, the FBI and the U. S. District Attorney,

he said. The bonding company which the law requires to be notified, already is conducting its investigation.

"Actual amount missing will not be known until the investigation is completed, Zimmer said, but he does not expect it to exceed $5,000. No customer accounts are involved, he said, and the bank is fully protected by insurance.

"The shortages involve small amounts which had been disappearing over a period of time, the bank president said."

"EXHIBIT 'B'"

Prior to the publication of the articles, set out in full above, there had been considerable rumor of an alleged shortage at the defendant bank.

The record indicates that efforts of a staff reporter of *The Mason City Globe Gazette* to obtain information concerning the rumored shortage had been fruitless, and the information contained in the two published articles was secured by the managing editor of the newspaper, personally, from Mr. Robert Zimmer, president of defendant bank.

Subsequent to the publication of the two articles above, plaintiff instituted suit against defendant bank. In her petition she alleged the news stories, although not identifying her by name, accused her directly and by innuendo of embezzlement, and falsely imputed to her improper conduct in her trade or business.

In defendant's answer, it admitted the quoted portions of exhibit A were given to the newspaper by its president, Mr. Zimmer, that Zimmer in substance made the statements attributed to him in exhibit B, and that both exhibits had been published in the newspaper. Defendant further asserted in its answer that all statements made by Zimmer were true, and were made without malice; that at the time of the publication of exhibits A and B the shortage at the bank, and the investigation thereof, was common knowledge in the community; and further asserted the bank was the depository of funds of many private citizens as well as many governmental bodies, and that such citizens and governmental bodies had a valid interest in the shortage. The bank alleged that because of the public interest in the shortage, it had a qualified privilege to convey the information to the newspaper and in effect to publish the allegedly libelous matter.

Trial was had to a jury and a verdict returned for the plaintiff, and judgment entered thereon, from which defendant appeals.

Defendant assigns eight errors in urging reversal. Seven of the assigned errors were submitted in appellant's original brief, the eighth was first asserted in appellant's reply brief, and we consider the eighth assigned error first.

I. For the first time, in its reply brief, defendant asserted trial court erred when it held as a matter of law the statements made by the defendant were libelous per se and so instructed the jury. We have repeatedly held we will not consider errors raised for the first time in reply briefs and arguments. Rule 344(a)4 (third), Rules of Civil Procedure; Richardson v. Neppl (Iowa 1970), 182 N.W.2d 384, 390; Wolfswinkel v. Gesink (Iowa 1970), 180 N.W.2d 452, 457; Union Trust & Savings Bank v. State Bank (Iowa 1969), 170 N.W.2d 674, 675–676; Ames v. Board of Supervisors of Polk County, 234 Iowa 617, 623, 12 N.W.2d 567, 570–571; Schmitt v. Postal Telegraph Cable Co., 164 Iowa 654, 658–659, 146 N.W. 467, 468. We are not now disposed to depart from our position heretofore taken, and decline to review the error assigned for the first time in defendant's reply brief and argument.

II. In the first three errors assigned by defendant, it is urged trial court erred in not submitting the defense of qualified privilege to the jury, in not giving an instruction on qualified privilege, and in failing to direct a verdict on the grounds the statements were privileged and defendant

had not shown an abuse of the privilege by actual malice.

■ This court in Vojak v. Jensen (Iowa 1968), 161 N.W.2d 100, 105, quoting from 33 Am.Jur., Libel & Slander, § 126, p. 124, concisely set out the elements of qualified privilege. We now quote from 50 Am.Jur.2d, Libel & Slander, § 195, pp. 698-700:

> "A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, *and publication in a proper manner and to proper parties only.* The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty. The transmitter must have an interest or duty in the subject matter, and the addressee must have a corresponding interest or duty, but such duty may be moral or social, rather than a legal one. *The defense of qualified privilege does not extend to a publication to the general public.* * * *"* (Emphasis supplied.)

See also Robinson v. Home Fire & Marine Ins. Co., 242 Iowa 1120, 1126-1127, 49 N. W.2d 521, 527; Restatement, Torts, § 594, p. 242; 53 C.J.S. Libel and Slander § 92b, p. 149. In order for the privilege to exist, there must be a valid interest on the part of both the person making the communication and the person to whom it is communicated.

■ It is for the court to decide as a matter of law whether the privilege is available for the communication in ques-

tion. Johnston v. Cartwright (C.A.8, Iowa), 355 F.2d 32; Mills v. Denny, 245 Iowa 584, 589, 63 N.W.2d 222, 225, 40 A. L.R.2d 933; Robinson v. Home Fire & Marine Ins. Co., *supra,* 242 Iowa at 1126, 49 N.W.2d at 524; Prosser, Torts, 4th Ed., § 115, p. 796; Restatement, Torts, § 619(1), p. 310.

■ From exhaustive review of the record, we are unable to find a valid interest on the part of the general public which necessitated or justified the making of the statements by the defendant for publication. In fact, defendant's president testified on cross-examination he knew of no depositor who was concerned about the rumored shortage at the bank, nor did he have any idea how a communication of the statements to the public would be of help to the defendant. The burden was upon the defendant to show a privilege existed. Restatement, Torts, § 613(2)b, p. 299. In absence of any showing of a valid interest on the part of the defendant, or the public generally, we conclude it was not error for the trial court to refuse to submit the question of qualified privilege to the jury.

■ With respect to the qualified, conditional or restricted privilege we incline to the view such privilege permits communication between parties with valid interests only and in such a manner that only those parties interested are the recipients of the communication. The qualified privilege by its very nature does not allow widespread or unrestricted communication. It does not permit parties to make communications to the general public when the public does not have a valid interest.

At pages 260-261, Restatement, Torts, § 598, we find:

> "An occasion is conditionally privileged when the circumstances induce a correct ro reasonable belief that
>
> "(a) facts exist which affect a sufficiently important public interest, and

"(b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true."

■ In the instant case, the shortage may have been of public interest, but the communication made by the defendant was not to a person empowered to act, but instead was communicated to the general public and was not privileged.

We conclude, therefore, it was not error for the trial court to refuse to instruct the jury on qualified privilege, or to direct a verdict on the basis a qualified privilege existed, or to submit the question of qualified or conditional privilege to the jury.

■ The plaintiff was not required to show malice. In statements libelous per se, malice is presumed. Vojak v. Jensen, *supra,* 161 N.W.2d at 104–105 and citations therein; 50 Am.Jur.2d, Libel & Slander, § 454, pp. 978–980; 53 C.J.S. Libel and Slander § 76, pp. 125–127.

III. Defendant next urges it was error for the court to instruct defendant had the burden to prove the truth of the statements in the sense imputed to them by plaintiff.

In Vojak v. Jensen, *supra,* 161 N.W.2d at 108–109, involving a similar instruction in a libel case, this court said:

"The alleged libel was unambiguous. It contained no innuendo. It required no explanation. Plaintiff pleaded the libelous letters in its petition and set out their meaning. Defendant in its answer met the charge head-on and stated the statements were true. If the language is ambiguous, defendant may deny the meaning attributed to it by plaintiff. He may explain it. He may assert in his own pleadings the meaning which was intended. * * *

" * * *

"We have frequently held the defense of truth must go to the libel in its entire-ty *and as plaintiff claims it was used.* (citations)." (Emphasis supplied.)

■ In the matter now before us, the language of the published matter is clear and unambiguous. The published matter clearly states a shortage of funds had occurred at defendant bank, and that as the result of an investigation some employees were not working because their bonds had been withdrawn. The words need no explanation, the meaning is clear that those people who were not working were involved in the shortages, and we need not seek for innuendo. See 53 C.J.S. Libel and Slander § 10, pp. 47–50.

■ It is for the court, in the first instance to determine whether the words are capable of a defamatory meaning, and for the jury to determine whether they were so understood. Restatement, Torts, § 614, p. 304; 53 C.J.S. Libel and Slander § 223a, p. 335; Prosser, Torts, 4th Ed., § 111, pp. 747–748.

■ The trial court properly determined the words of the defendant's statements were capable of a defamatory meaning, and instructed the jury the defendant had the burden of proving the truth of the statements in the sense *imputed to them* by the plaintiff. Vojak v. Jensen, *supra,* 161 N.W.2d at 109, and cases cited therein.

Defendant's contention it was required to prove the truth of the publication in the sense imputed to it by plaintiff relieved plaintiff of the burden of showing she was within the group mentioned in exhibits A and B, we find is without merit. Reading the instructions as a whole, we determine the jury was properly instructed plaintiff was required to prove herself within the group referred to in exhibits A and B. Flentie v. American Community Stores Corp. (C.A.8th Iowa), 389 F.2d 80 (1968); Robeson v. Dilts (Iowa 1969), 170 N.W.2d 408, 414; Reeder v. Iowa State Highway Commission (Iowa 1969), 166 N.W.2d 839, 844; Bauman v. City of Waverly (Iowa 1969), 164 N.W.2d 840, 845; Henneman v.

McCalla, 260 Iowa 60, 71, 148 N.W.2d 447, 454; Rosin v. Northwestern States Portland Cement Co., 252 Iowa 564, 575–576, 107 N.W.2d 559, 565. The instructions are neither confusing nor inconsistent.

■ IV. Defendant further asserts trial court erred in not giving its requested instruction 2, which read:

"Plaintiff has based her action on statements contained in the newspaper articles, Exhibits 'A' and 'B'. In determining whether plaintiff has established her case as herein set out, you may consider only the statements made by defendant that are set out in Exhibits 'A' and 'B' and no others."

We take note, however, of the context of paragraph 4 of the court's instruction 7 as given:

"The defendant is not responsible for any parts of the publications, Exhibits A and B, which were not released or authorized for publication by Robert Zimmer."

We are unable to perceive any difference in the instruction submitted to the jury and the requested instruction above set out. The instruction as given clearly limits the responsibility of the defendant to only those parts of exhibits A and B which were authorized by defendant's president. The instruction was proper as given and it was not error to refuse the defendant's requested instruction. See Henneman v. McCalla, *supra,* 260 Iowa at 68–69, 148 N.W.2d at 452–453.

■ Nor do we agree, as defendant urges, the instruction as given was improper because it referred to the court's conclusion the statements made by defendant were libelous per se. The court was required to determine whether the material in exhibits A and B was libelous per se. Vojak v. Jensen, *supra,* 161 N.W.2d at 109; Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 1134–1135, 245 N.W. 231, 233, 86 A.L.R. 839; Flannery v.

Allyn, 47 Ill.App.2d 308, 198 N.E.2d 563, 566; Goudy v. Dayton Newspapers, Inc., 14 Ohio App.2d 207, 237 N.E.2d 909, 912; 50 Am.Jur.2d, Libel & Slander, § 487, p. 1020; 53 C.J.S. Libel and Slander § 223a p. 336. Having determined that said exhibits were libelous per se, it was proper to so instruct the jury.

V. Defendant complains the instruction limiting plaintiff's recovery, if any, to damages which were the natural and proximate result of defendant's statements was too broad in that it failed to instruct the jury defendant was not responsible for gossip and rumor not arising from publication of exhibits A and B. Defendant contends that repetitions by townspeople of the context of exhibits A and B were separate and distinct acts and defendant is not liable therefor, citing Robinson v. Home Fire & Marine Ins. Co., 244 Iowa 1084, 1092, 59 N.W.2d 776, 781; and Mills v. Flynn, 157 Iowa 477, 490–491, 137 N.W. 1082, 1087–1089.

We are unable to place reliance upon the conclusions of this court in Mills v. Flynn, *supra,* as does the defendant in its argument that it is not responsible for repetition or republication. In the Mills case, *supra,* 157 Iowa at 490–491, 137 N.W. at 1087–1089, this court defined the limits of liability of the original publisher for repetition or republication, and laid down the general rule that a person is not liable for repetition or republication but goes on to say (157 Iowa at 491, 137 N.W. at 1088):

" * * * An exception to the general doctrine exists where the original slander is made to one with the expectation that it be repeated, or under such circumstances that the hearer would be expected to repeat it in the course of duty; but the instant case does not fall within any of the exceptions known to the law. * * * "

■ We are unable to accept defendant's contention it is not liable for repetitions which resulted from the publication

of exhibits A and B in a newspaper of general circulation. Certainly, one who communicates libelous material to a newspaper may not escape liability on the premise urged by the defendant. Repetition or republication by the newspaper would be expected.

■ Persons making libelous statements are, and should be, liable for damages resulting from a repetition or republication of the libelous statement when such repetition or republication was reasonably foreseeable to the person making the statement. Recovery is limited to those damages which were a natural and probable consequence of the original libel or its repetition or republication. See Anno., 96 A. L.R.2d 373 and Later Case Service thereto; 50 Am.Jur.2d, Libel & Slander, § 172, pp. 674–676; 53 C.J.S. Libel and Slander § 85, pp. 137–138. See also Restatement, Torts, § 576(c), p. 190.

■ We conclude it was not error for the court to instruct defendant was liable for damages which resulted naturally and probably from the publication of exhibits A and B. The instructions correctly limited the jury's consideration thereto, and defendant's contention to the contrary is without merit.

■ VI. Defendant next contends the admission into evidence of rumor and gossip concerning the investigation at the bank, much of which occurred prior to the publication of the allegedly defamatory statements, was error.

As we have previously noted, the jury was properly instructed that damages, if any were found, were limited to those which were a natural and probable result of the statements made by defendant. Examination of the record indicates that most of the evidence of which defendant complains, was introduced by the defendant itself, and that the introduction of evidence of gossip and rumor *prior* to the defendant's statements would tend toward mitigation of damages. The net effect, therefore, would be advantageous to defendant. We fail to find merit in defendant's assertion, and hold the trial court committed no error in this area.

■ VII. We by no means intend to restrict or limit the area of free speech in matters of public concern by this decision. We decide only that the statements in the instant case were not protected by qualified privilege and as made were libelous of plaintiff.

Because of the possible impact of this decision, we deem it advisable to delineate carefully the material which constituted the alleged libel. Certainly, the public is entitled to be advised of matters that may be of public interest. We have noted, *supra*, that the investigation of the bank may have had a public interest, and a communication by the bank to the public there was a shortage at the bank, that it was relatively inconsequential, that it was fully insured, and that it had been reported to the proper State and Federal officials, would not have been libelous. However, the statements in exhibits A and B went much too far; they reported the investigation would continue to clear all *innocent* persons, and that some people were not working because their bonds had been withdrawn. Such statements imputed criminal conduct to the plaintiff and were libelous of her in her trade or business.

We find no reversible error, and affirm the trial court.

Affirmed.

All Justices concur, except MASON and HARRIS, JJ., who take no part.