Robert KNUDSEN, Appellant,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY; C.V. Miles, Individually and in His Capacity as Assistant Vice–President in Charge of Special Agents for Chicago and North Western Transportation Company; Dale Walrod, Individually and in His Capacity as Regional Supervisor Special Agent for Chicago and North Western Transportation Company, Appellees.

No. 89–1210.

Supreme Court of Iowa.

Dec. 19, 1990.

Ann Fitzgibbons of Scalise, Scism, Sandre & Uhl, Des Moines, for appellant.

Joseph G. Van Winkle of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Robert Knudsen, appeals from an adverse judgment following trial to the court of his claims of defamation and discrimination in employment. The defendants and appellees are Knudsen's former employer, Chicago and North Western Transportation Company (CNW) and certain of its management employees.

In seeking reversal, plaintiff contends that the district court erred in: (1) concluding that his employee discrimination claim was based on an impermissible extraterritorial application of a civil rights ordinance of

the City of Mason City, (2) excluding evidence of a defamatory conversation made after the events upon which plaintiff's defamation claim is founded, (3) admitting hearsay testimony concerning an insulting phone call by plaintiff to the wife of a union representative, (4) considering evidence of plaintiff's increased earnings after termination of his employment with CNW, and (5) finding against plaintiff on the merits of his defamation claim. After reviewing the record and considering the arguments of the parties, we affirm the judgment of the district court.

Plaintiff was employed as a special agent, or railroad policeman, for CNW from November 1979 until April 1984. For bargaining purposes under the Railway Labor Act, special agents are represented by the American Railway and Airways Supervisors Association Union. Under the applicable labor agreement, a special agent, in certain circumstances, may bump another special agent with less seniority and, in the process, take over the other person's job. To accomplish this, the "bumping" employee must be qualified to perform the position being sought.

In December 1982, plaintiff's position with CNW in Des Moines was eliminated, forcing him to seek relocation within CNW's organization. To accomplish this, plaintiff attempted to bump another special agent in Mason City with less seniority. C.V. Miles, supervisor of security for CNW refused to approve plaintiff's request to bump into the Mason City position. There was a sharp dispute in the evidence concerning the reason for that action.

The Mason City special agent was married and had a family living in Mason City. Plaintiff was single. Plaintiff has contended throughout this litigation that he was told by Miles that CNW believed that an employee with a family should not ordinarily be displaced by a single employee if the single employee could be accommodated at some other location in the organization. Officials of CNW have at all times denied that plaintiff's Mason City transfer was refused because of a policy favoring married employees. CNW contends that plaintiff's request to transfer to Mason City was not approved because he did not have the necessary maturity and capacity to manage a one-person office such as the Mason City position.

Plaintiff filed a union grievance challenging CNW's action with respect to the Mason City position. The manager of labor relations for CNW determined that plaintiff's rights under the collective bargaining agreement had not been violated. Plaintiff then pursued further administrative remedies available under the Railway Labor Act, 45 U.S.C. § 153 (1982). The Railroad Adjustment Board upheld the employer's action.

Plaintiff refused to accept a special agent position in Chicago which was offered by CNW. As a result, he was furloughed from approximately December 12, 1982, until September 2, 1983. At that time, he was again employed by CNW in Des Moines on a temporary basis as a consequence of illness of another special agent regularly located there. Plaintiff was again furloughed on March 4, 1984, when the regular special agent returned to the position in Des Moines. At this time, plaintiff was again offered a special agent position in Chicago which he refused. At this point, CNW permanently terminated plaintiff's employment status with that organization.

In November 1983, plaintiff filed a petition with the Mason City Human Rights Commission, alleging a discriminatory employment practice in violation of a local civil rights ordinance prohibiting employment discrimination based on marital status. That agency made a finding that "probable cause" existed with respect to plaintiff's claim. After the matter had been pending before the Mason City Human Rights Commission for more than a year, plaintiff received a "right-to-sue" letter and commenced the present action in the district court.

Plaintiff's action was originally filed in the Iowa District Court for Cerro Gordo County and combined a civil rights action under Iowa Code chapter 601A with a claim of defamation. The civil rights action was

predicated on an alleged violation of the Mason City ordinance on marital status discrimination. CNW moved to dismiss the civil rights action. It asserted that marital status discrimination is not specifically prohibited under the state statutes protecting civil rights (Iowa Code chapter 601A) and that local governments may not expand upon the list of prohibited practices established by the state legislature. CNW also asserted that plaintiff was never employed in Mason City, and no action by CNW or its supervisory employees concerning his employment took place in Mason City. Consequently, it urged that application of the Mason City ordinance would be extraterritorial and beyond the legislative jurisdiction of the local city counsel.

The district court rejected CNW's claim that local governments cannot expand upon the list of prohibited practices contained in chapter 601A but ruled favorably on its claim that plaintiff was seeking an improper extraterritorial application of the Mason City ordinance. The court dismissed plaintiff's civil rights action on the latter ground.

After dismissal of plaintiff's civil rights claim, a change of venue was granted on the defamation claim. That claim was tried by the district court in Polk County without a jury. The court found that CNW's contentions that plaintiff lacked maturity and was not qualified for the Mason City position were substantially correct. It further found that all statements by CNW employees concerning plaintiff's past job performance and qualifications, which were the acts of CNW and its employees upon which plaintiff's defamation claim was based, were either (a) information necessarily imparted by and between agents of plaintiff's employer with respect to plaintiff's pending transfer application, or (b) information imparted to union officials or Railway Labor Act administrators with respect to plaintiff's grievance. The court concluded that all of these disclosures were cloaked with a qualified privilege, were made in good faith, and thus were not actionable. The court dismissed plaintiff's petition on July 19, 1989, and this appeal followed. Other facts which bear on our decision will be set forth in connection with our discussion of the legal issues presented.

## I. *The Defamation Claim.*

■ We first consider plaintiff's contention that the district court erred in finding against him on the merits of his defamation claim. In reviewing a district court's findings in an action tried without a jury, we have consistently recognized that the trial court's findings of fact have the effect of a special verdict and should be broadly and liberally construed to uphold, rather than defeat, the judgment. *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235, 238 (Iowa 1988); *Byers v. Contemporary Indus. Midwest, Inc.*, 419 N.W.2d 396, 397 (Iowa 1988).

■ Under the law of defamation, a qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which that person has a right or duty, if made to a person having a corresponding interest or duty in a manner and under circumstances fairly warranted by the occasion. *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 116–17 (Iowa 1984); *Brown v. First Nat'l Bank*, 193 N.W.2d 547, 552 (Iowa 1972); *Vojak v. Jensen*, 161 N.W.2d 100, 105 (Iowa 1968). The essential elements of such a privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *Brown*, 193 N.W.2d at 552.

■ The allegedly defamatory statements relied upon by plaintiff all originated with a December 9, 1982, letter from C.V. Miles to him, with no other addressees, which read, in part:

I am not accepting your displacement to Job No. 360 [the Mason City job] due to lack of qualifications.

You may exercise your displacement rights on any other position for which you have seniority rights and fitness and ability.

The only individuals who were shown to have been made aware of this communication and other similar communications detailing the views of Miles and other CNW supervisory employees concerning plaintiff's job performance and qualifications were other CNW employees with personnel responsibilities or union representatives and Railway Labor Act administrators charged with processing plaintiff's grievance.

We conclude that under the circumstances the statements in question were privileged unless shown to have been made with actual malice. *See Vinson*, 360 N.W.2d at 116. The district court findings that the statements were not made with actual malice are supported by substantial evidence in the record and may not be overturned. Consequently, we must reject plaintiff's contention that the district court erred in its determination of the merits of his defamation claim.

■■■ A. *Evidentiary issues on question of liability.* Plaintiff also argues two evidentiary issues which arose in the trial of the defamation claim. These issues relate to (a) the refusal to admit evidence of an alleged statement by C.V. Miles to another CNW employee on November 7, 1985, defaming plaintiff; and (b) the admission of hearsay testimony concerning an insulting telephone call which plaintiff allegedly made to the wife of a union official.

CNW argues, and we agree, that the November 7, 1985, statement by Miles had not been identified in discovery proceedings as a basis for plaintiff's defamation claim and thus was properly excluded. The union official's testimony concerning plaintiff's telephone call to his wife was offered in connection with testimony by that witness about a later confrontation with plaintiff confirming that the call occurred. We believe the evidence of what the witness had been told about the phone call was properly admitted in order to present a clear understanding of the entire event. *See* Iowa R.Evid. 106(a).

■■■ We also believe the phone call evidence was cumulative. In addition to the incident involving the union official's wife, there was evidence that plaintiff on other occasions made rude, sarcastic, and condescending communications to legal secretaries, other union officials and a county sheriff. We are therefore not persuaded that the admission of the evidence concerning the telephone call was sufficiently prejudicial to warrant reversal. *See Miller v. Bonar*, 337 N.W.2d 523, 528 (Iowa 1983) (hearsay evidence harmless when it only confirms other evidence of the event or characteristic it was offered to prove); *Jaeger v. Hackert*, 241 Iowa 379, 389, 41 N.W.2d 42, 48 (1950) (same).

B. *Evidentiary issues relating to damages.* Plaintiff also urges an evidentiary issue which relates only to damages, *i.e.*, that the court improperly permitted CNW to show evidence of plaintiff's increased earnings after termination of his employment with the defendant. Because the court found against the plaintiff on the issue of liability, any error with regard to evidence of plaintiff's damages had no bearing on the judgment. *See Shawhan v. Polk County*, 420 N.W.2d 808, 810–11 (Iowa 1988); *Galbraith v. George*, 217 N.W.2d 598, 603 (Iowa 1974); *Christianson v. Kramer*, 257 Iowa 974, 978–79, 135 N.W.2d 644, 647 (1965).

II. *The Civil Rights Claim.*

Finally, we consider plaintiff's contention that the district court erred in determining that his employment discrimination claim based on marital status depended on an extraterritorial application of a local ordinance. Plaintiff asserts that, where an employer has employees at various locations within its organization, it is subject to local regulations affecting employment at all locations which bear a relationship to a discrimination claim. He contends that in the present case Mason City has a legitimate interest in assuring that local employers hiring or transferring employees from other locations for work in Mason City comply with the local regulations on employment discrimination. He urges that to allow CNW to claim extraterritoriality will unnecessarily permit employers whose principal place of business is outside of

Mason City to escape these regulations in hiring or transferring from other locations. We need not resolve this issue in the present case.

CNW and the other defendants contend that the district court's ruling limiting the application of the local ordinance was correct. They also contend that plaintiff's marital status discrimination claim is preempted by the Railway Labor Act, 45 U.S.C. §§ 151–188. In regard to the claim of preemption, plaintiff notes that the Supreme Court has recognized that certain civil rights claims are not preempted by the labor relations regimen set forth in the Railway Labor Act. *See Colorado Anti–Discrimination Comm'n v. Continental Airlines*, 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84, 91 (1963).

■ Assuming that plaintiff is correct with respect to the availability of civil rights actions against an employer outside the ambit of the Railway Labor Act, it nevertheless appears that, if Railway Labor Act procedures are pursued to a conclusion, a collateral estoppel or issue preclusion may arise which will defeat a subsequent effort to pursue a civil rights claim outside the confines of the Act. We have recognized that collateral estoppel and issue preclusion may arise within the context of administrative proceedings. *Walker v. Iowa Dep't of Job Serv.*, 351 N.W.2d 802, 805 (Iowa 1984); *Toomer v. Iowa Dep't of Job Serv.*, 340 N.W.2d 594, 598 (Iowa 1983).

■ It has been demonstrated in the present case that plaintiff's grievance, which was processed to a conclusion under Railway Labor Act procedures, was based on the same theory of marital status discrimination which he later urged in this civil action. Having lost on that issue at the administrative level, he should not now be permitted to reassert the claim in another forum.

■ Our view concerning the collateral estoppel or issue preclusive effect of the administrative proceedings is buttressed by the fact that there also appears to have been an issue preclusion on plaintiff's civil rights claim based on the result reached in

his defamation action. The district court expressly found on the latter claim that CNW's contentions that plaintiff lacked maturity and was not qualified for the Mason City position were substantially correct. It further found that plaintiff's claim that his transfer request was refused because of marital status discrimination was not established.

■ We recognize that, in order for an issue preclusion to arise from a court's findings of fact, the findings must be necessary to the decision in the case. *McGee v. Iowa Dep't of Pub. Safety*, 443 N.W.2d 693, 696 (Iowa 1989); *Noel v. Noel*, 334 N.W.2d 146, 149 (Iowa 1983); *Bertran v. Glens Falls Ins. Co.*, 232 N.W.2d 527, 534 (Iowa 1975); *Schneberger v. United States Fidelity & Guar. Co.*, 213 N.W.2d 913, 917 (Iowa 1973). We believe that requirement has been met in the present case. In order to determine CNW's qualified privilege defense in the defamation action, it was necessary for the district court to make findings with respect to the presence or absence of malice in connection with the statements made about plaintiff's job performance. *See Vinson*, 360 N.W.2d at 117. The employer's motive was an essential fact to be determined in connection with that inquiry.

Because we conclude that the basis for plaintiff's employment discrimination claim has been rejected in both a prior administrative determination and a separate legal action, any error by the district court in the application of the Mason City ordinance was without prejudice. The judgment of the district court is affirmed.

AFFIRMED.