**Dennis E. REES, Appellee,**

v.

**Bernard J. O'MALLEY, Appellant.**

No. 89–1030.

Supreme Court of Iowa.

Oct. 17, 1990.

Jack W. Rogers, West Des Moines, for appellant.

Thomas P. Hyland and Robert H. Laden of Hyland, Laden & Pearson, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Plaintiff Dennis E. Rees sued defendant attorney Bernard O'Malley, alleging that O'Malley slandered him while making a presentation to the Des Moines city council. After trial, the jury returned a verdict of $250,000 against defendant. O'Malley appeals. We affirm on all issues except dam-

ages. We find the damages excessive and order a new trial on the issue of damages.

I. *Background facts and proceedings.* Dennis E. Rees was interested in purchasing a parcel of realty owned by the City of Des Moines. The city property bordered realty that he owned. On April 15, 1986, Rees made an offer to purchase the property. Charles and Patricia Punelli operated an iron business on land also abutting the city lot. Punellis were notified of Rees' offer to buy the property. Punellis had asked to be notified of any offers to buy the parcel of land because they also had an interest in acquiring the property as they had been using it for some time in their business.

Bernard O'Malley, attorney for Punellis, arranged an informal meeting on July 2, to discuss the proposed sale of the property. Present at the meeting were Rajesh Jain of the city planning and zoning commission staff, Rees, O'Malley, and Punellis. The meeting resulted in a preliminary agreement between Rees and Punellis. Rees agreed to withdraw his offer to purchase the city property if Punellis agreed to grant Rees an option to purchase a parcel of real estate that Punellis owned in the same area.

Following the meeting, Rees sent a letter to Punellis stating what he believed to be the agreement between the parties, and reiterating that their attorney was to be drawing up papers to effectuate the agreement. In the letter, Rees indicated his desire to complete the agreement by July 17. In addition, Rees also forwarded a letter to the planning and zoning commission stating that he had no further interest in the city property.

Thereafter, Punellis did not follow through with the purchase of the property from the city, and did not draw up the papers necessary to grant Rees an option to buy the parcel of land owned by Punellis. Because there had been no progress, on October 2 Rees renewed his efforts to purchase the city property that he was originally interested in buying.

The property sale came before the Des Moines city council on August 24, 1987.

O'Malley, in behalf of Punellis, was given the floor at the city council meeting to express his views regarding the proposed sale of the city property. The meeting was televised on the cable network into 68,000 Des Moines area homes. During his presentation showing Punellis' need for the city lot in Punellis' iron business, O'Malley made the following statement:

> These trucks that are large trucks [used in connection with Punellis' business] and when they come around as you can see, they need space. If you sell that property to Mr. Rees and what the devil he will use it for with that situation, I don't know, other than for extortion. As you can see there is no way we can use our property, for all purposes you killed it.

Later in the meeting, while the city attorney was trying to determine whether Rees was still interested in the property, O'Malley made the following statement:

> Well he has written me a letter and kinda says you can have it, that is why I politely used the word extortion, I probably shouldn't have used the word extortion, but the only thing I can think of is he will probably sell it back, ...

Based on the statements made at the city council meeting by O'Malley, Rees filed suit alleging that he was slandered when O'Malley accused him of committing extortion, and, that under Iowa Code section 659.1 (1987), O'Malley's comments constituted slander *per se.* O'Malley asserted, in response, that his use of the word extortion was not slander *per se,* and, even if his statements were slanderous *per se,* he possessed a qualified privilege that immunized him from any liability that might result from the statements.

At the trial's conclusion, the district court instructed the jury that O'Malley's statements constituted slander *per se,* and ruled that as a matter of law O'Malley was not entitled to a qualified privilege. The jury returned a verdict for plaintiff in the amount of $250,000.

O'Malley appeals, contending, (1) that his statements did not constitute slander *per se,* (2) that he was entitled to a qualified

privilege which shielded him from liability, and (3) that the jury verdict was excessive.

■ II. *Were O'Malley's statements concerning Rees slander per se?* Rees alleged that O'Malley accused him of extortion, a class D felony punishable by a jail sentence in Iowa. *See* Iowa Code §§ 711.4 and 902.9(4). The trial court agreed and ruled that O'Malley's accusation of extortion constituted slander *per se* under Iowa law.

Language charging a person with the commission of a crime is slanderous *per se* when the crime charged is indictable, and it must be a crime that involves moral turpitude or one which subjects the party charged to a sentence of incarceration. *Amick v. Montross*, 206 Iowa 51, 57, 220 N.W. 51, 54 (1928). O'Malley charged Rees with extortion. Extortion is a criminal charge that both involves moral turpitude and subjects the party charged to a prison sentence. Therefore, applying our test as stated in *Amick*, O'Malley's statements are slanderous *per se*.

O'Malley does not contend that charging a person with the crime of extortion is not slander *per se*, rather, O'Malley contends that he did not accuse Rees of committing the crime of extortion.

■ A. *The application of O'Malley's statements.* We conclude for the following reasons that O'Malley's statements were not speculation that Rees might commit extortion in the future, rather, they accused Rees of extortion. For words to be slanderous *per se*, they must import a charge of a crime. *Bays v. Hunt*, 60 Iowa 251, 253, 14 N.W. 785, 786 (1882). O'Malley claims his statements were speculation that if the city property were sold to Rees it would be used in the future by Rees for purposes of extorting Punellis. O'Malley argues that Rees will not be in a position to commit the crime of extortion until Rees acquires the city property, and only at that future time can Rees utilize the property for extortion.

Rees responds that the district court correctly ruled that O'Malley's statements accused him of a crime, therefore, constitut-

ing slander *per se*. His argument finds support in the statutory definition of extortion. Iowa Code section 711.4 states that a person commits extortion if the person does:

> the following with the purpose of obtaining for oneself or another anything of value....
>
> 4. Threatens to harm the credit or business or professional reputation of any other person.

In simple language, extortion is defined for present purposes as threatening to harm the business of another person.

We have previously been asked to determine whether a statement was the accusation of a crime, or only speculation that a crime would occur in the future. In *Bays*, we set forth the principles to apply in making this determination. We stated:

> If the words only imply the purpose or intention on the part of the person spoken of to commit a crime, or describe him as possessing a disposition, or as wanting moral qualities which would prompt him to commit the crime, or amount to an allegation that, if opportunity offers, he would commit it, they are not actionable *per se*.

*Id.* In determining whether a statement refers to the past or ongoing commission of a crime, we stated:

> [I]f the surroundings and circumstances then known to speakers and hearers gave the words reference to any specific transaction or occurrence, so that the hearers would naturally understand the speaker to impute to the plaintiff the actual commission of [a crime], instead of merely expressing the defendant's opinion or belief as to plaintiff's moral character, then the words should be considered as actionable....

*Id.*

The alleged slanderous statements were made during a discussion at a Des Moines city council meeting concerning who should be allowed to buy city property desired by both Rees and Punellis. The discussion was lengthy and covered all the facts previously stated. It was apparent that O'Malley was present to represent Punellis in the

dispute over who would receive the property.

During the meeting, O'Malley stated: "If you sell the property to Mr. Rees and what the devil he will use it for with the situation, I don't know, other than extortion." Viewing O'Malley's words under the circumstances known to the speaker and the audience, it appears that O'Malley was asserting that Rees had already committed extortion by threatening to harm Punellis' business. This viewpoint is supported by the series of events which surround the dispute over the city property.

O'Malley's presentation to the city council suggested that Rees had no business use for the property, and that the only reason he wished to obtain it was to hurt Punellis' business operations. O'Malley attempted to discredit Rees in an effort to convince the council that the property should be sold to his clients. His methods included creating the impression that Rees was using the property for extortion of Punellis.

Extortion only requires that threats are made to injure a business. *See* Iowa Code § 711.4(4). Extortion does not require actual harm to have taken place.

O'Malley's presentation gave the impression that Rees had already threatened to injure Punellis' business. The audience would understand O'Malley to mean that Rees had threatened to harm Punellis' business. Therefore, O'Malley's statements were an accusation of extortion, and, an accusation of extortion constitutes slander *per se.*

■ B. *The word "extortion" was not ambiguous.* O'Malley asserts that even if we find that extortion referred to a past event, he is still not liable because the word extortion is ambiguous.

When a statement is unambiguous, the issue of whether it is defamatory *per se* is for the court. *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 116 (Iowa 1985). If, on the other hand, "the language is capable of two meanings including the one ascribed by the complainant, it is for the jury to say whether such

meaning was the one conveyed." *Id.* Finally, "[t]he presumption [is] that the words were understood to charge the offense they designate." *Myers v. Dresden*, 40 Iowa 660, 661 (1875). "[T]he burden of proving that the words were not so understood is upon the defendant." *Id.*

The evidence establishes that O'Malley's statements unambiguously accused Rees of extortion; therefore, the district court correctly ruled that his statements constituted slander *per se.* O'Malley intended to accuse Rees of threatening to harm Punellis' business, and the audience understood O'Malley's statements to mean that Rees was threatening to harm Punellis' business. O'Malley accused Rees of extortion while explaining that Rees had no use for the city property because it was too small and that if the property were sold to Rees it would destroy Punellis' business. Further, O'Malley suggested that if the property was sold to Rees, he would end up selling it to Punellis after extorting Punellis. Clearly, in the context of this discussion, O'Malley's reference to extortion is unambiguous. O'Malley intended to state that Rees had threatened to buy the property and force Punellis off the city lot, harming their business, unless Punellis did as Rees wished.

Even O'Malley, in his brief, describes his statements in a manner that supports a finding that he intended to convey that Rees was threatening to harm Punellis' business. O'Malley describes the message he intended to convey with his statements as: "undue pressure and intimidation tactics utilized by Rees." The use of the word extortion with the intent described in O'Malley's brief is an unambiguous accusation of extortion as defined by Iowa Code section 711.4.

At any rate, the presumption is that words are understood to charge the offense they designate. The burden of proving otherwise rests on the defendant. *Myers*, 40 Iowa at 661. O'Malley presented no evidence at trial and has not carried his burden of establishing that the audience understood the statements to mean something other than a charge of extortion.

Therefore, we must hold that O'Malley's statements unambiguously charged Rees with the crime of extortion.

III. *The trial court correctly ruled that the doctrine of qualified privilege was not applicable in this case.* Both parties agree on the standard for determining whether a qualified privilege exists:

A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, *and publication in a proper manner and to proper parties only.* The privilege arises from the necessity of full and unrestricted communication concerning a matter which the parties have an interest or duty in the subject matter, and the addressee must have a corresponding interest or duty, but such duty may be moral or social, rather than a legal one. *The defense of qualified privilege does not extend to a publication to the general public.*

*Brown v. First Nat'l Bank*, 193 N.W.2d 547, 552 (Iowa 1972). However, the parties reach different results when they apply this test to the facts of the present case. In choosing the proper result, the burden is on the defendant to establish the existence of a qualified privilege, which would shield him from liability, if he wishes to rely upon that privilege as a defense. *Id.*

■ The dispute mainly arises over whether the final element of the test for establishing a qualified privilege is met: were O'Malley's statements published in a proper manner and to proper parties only?

A. *O'Malley published his statements to the general public.* Initially, it is clear that O'Malley published his statements to the general public. O'Malley made his statements at a public city council meeting with an audience present, and with the proceedings being broadcast over the local television cable system to more than 68,000 homes in the Des Moines area.

B. *The general public was not a proper party.* It is also clear that the general public was not a proper party because it did not have a valid interest in the dispute between Rees and Punellis.

With respect to the qualified, conditional or restricted privilege we incline to the view such privilege permits communication between parties with valid interests only and in such a manner that only those parties interested are the recipients of the communication. The qualified privilege by its very nature does not allow widespread or unrestricted communication. It does not permit parties to make communications to the general public when the public does not have a valid interest.

*Id.* at 552. This was a dispute between two abutting landowners to city land over who was going to be allowed to buy the parcel of land from the city. The city's policy was to sell the land to abutting landowners. The city already had decided that it was going to sell the land. The price had been set. The only decision the city council had to make was to choose whether Punellis or Rees were to receive the property. Therefore, only these two adjacent landowners had an interest in purchasing the property. The general public had no valid interest at this stage. Further, the burden was on O'Malley to demonstrate that the public had a valid interest in the dispute between Rees and Punellis. This he has not done.

C. O'Malley, however, offers several explanations to support his position that the statement was published in a proper manner and to proper parties only, and that the publication of his statement to the public did not destroy his qualified privilege.

1. *The communication to the general public did not fall within the bounds of incidental communication.* O'Malley first relies on the proposition that the fact that a communication is incidentally brought to the attention of others than the one for whom it was intended does not

destroy the privilege unless strangers to the privileged occasion are present at the speaker's invitation or design. *Robinson v. Home Fire & Marine Ins. Co.*, 244 Iowa 1084, 1095, 59 N.W.2d 776, 782 (1953). O'Malley contends that the publication of the statement to people attending the meeting and to people watching the meeting on television was incidental to his presentation of the information to the council. We reject this contention. The communication to the public in this case does not fall within the bounds of incidental communication.

In *Robinson*, the communication characterized as incidental occurred when three or four people stood eight to ten feet away from a private conversation. *Id.* There was no evidence that any of these people overheard the conversation. *Id.* The present case presents an entirely different situation. Rees was not present at the council meeting. O'Malley knew that his statements were being overheard by the audience and, presumably, he knew that they were being broadcast over the local cable network. Further, evidence was introduced establishing that O'Malley's statements were heard by the general public. Similar evidence was not presented in *Robinson*. *See id.* In no sense were O'Malley's statements intended only for the ears of the city council. O'Malley knew he was also being heard by the public.

2. *Rees did not inject himself into a matter of public concern.* O'Malley also asserts that Rees should be treated as a public figure because he injected himself into a matter of public concern and, therefore, invited comment and criticism of his actions. "[P]ublic figures are not entitled to the same protection of their reputations as private parties because public figures have access to channels of effective communication, have a reasonable opportunity to counteract false statements, and are not as vulnerable to injury as private individuals." *Anderson v. Low Rent Housing Commission*, 304 N.W.2d 239, 245–46 (Iowa 1981).

O'Malley relies on *Haas v. Evening Democrat Co.*, 252 Iowa 517, 107 N.W.2d 444 (1961), which provides that a person "by interjecting himself into a matter of public concern and by criticizing the actions of public officials and requesting certain action had invited or at least excused comment and criticism from those who held other views." *Id.* at 522, 107 N.W.2d at 448; *see also Anderson*, 304 N.W.2d at 245. The present situation, however, is factually distinguishable from *Haas* and *Anderson*.

In *Haas*, the plaintiff was attempting to influence the city council and the public adversely to the construction of a proposed boat dock. *Haas*, 252 Iowa at 523, 107 N.W.2d at 448. In an effort to do so, the plaintiff had communicated both verbally and in writing with the city council. *Id.* He had also circulated handbills to the public and had purchased many paid advertisements in the newspaper. *Id.* Under these circumstances, the court found that the plaintiff was engaged in a public controversy. *Id.* at 522, 107 N.W.2d at 448.

In *Anderson*, the plaintiff also injected herself into a public controversy. *Anderson*, 304 N.W.2d at 246. Anderson invited attention. *Id.* She contacted the media several times and purposefully injected herself into the center of a public controversy which received widespread media coverage and involved city projects and officials. *Id.* at 242, 246–47.

Rees' actions in this case were far different. Rees had made application to buy a parcel of land from the city, but he did nothing that amounted to involvement in a matter of public concern. There was only one other party interested in the present land transaction. Rees was not involved in a matter of interest to the public, as in the cases of *Haas* and *Anderson*.

Further, in *Haas* and *Anderson*, the plaintiffs actively engaged the public. Haas circulated handbills to the public and printed advertisements in the local newspaper. Anderson contacted the media several times to provide them with information. Rees did not have similar access to the media which would have allowed him to counteract the false statements. Rees did nothing in this case to involve the public

and did not even attend the council meeting.

We conclude Rees did not inject himself into a matter of public concern. Therefore, O'Malley cannot rely on the defense of qualified privilege.

IV. *The damages awarded by the jury were excessive.* O'Malley asserts that the $250,000 jury verdict was excessive. The trial court overruled defendant's post-trial motions that challenged the verdict amount. *See* Iowa R. Civ. P. 243, 244.

Both parties agree on the general law regarding excessive damages:

The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. . . .

The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise.

*Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975). In reviewing the evidence, "we view the evidence in the light most favorable to the verdict and need only consider the evidence favorable to the plaintiff whether contradicted or not." *Id.*

A. *Proof of damages.* A statement that is slanderous *per se* is actionable without proof of damage. *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 115–16 (1984). However, recovery is limited to "those damages which were a natural and probable consequence of the original [slander] or its repetition or republication." *Brown v. First Nat'l Bank*, 193 N.W.2d 547, 555 (Iowa 1972).

Although we do not require proof of damages, our court of appeals has stated that damages may not be awarded based upon the defamatory material alone and no other evidence. *Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 300 (Iowa App.

1985). That court stated that "the jury must be presented with evidence upon which the consequences of the [slander] can be judged, evidence such as the nature of the plaintiff's reputation before the libel was published and the extent of the publication." *Id.* (citing *Melton v. Bow*, 241 Ga. 629, 631, 247 S.E.2d 100, 101 (1978)).

The court of appeals requirement of evidence of reputation and extent of publication is not inconsistent with our statement in *Vinson* that there need be no proof of damages when a statement is slanderous *per se.* Requiring evidence of reputation and extent of publication is necessary so that a jury can determine the extent of injury, but it is not imposing a burden on the plaintiff of proving damages.

In this case Rees presented evidence of his reputation and the extent to which the slanderous statement was published. Phillip Monteith, Rees' neighbor, testified to Rees' good reputation in the community, and Nile McDonald, senior vice-president of Heritage Communications, testified to the fact that the slanderous statement was broadcast into more than 68,000 homes in the Des Moines area. Having established Rees' good reputation in the community and the extent that the slanderous statement was published to the general public, we only need determine whether the evidence supported a verdict of $250,000, considering those damages which were a natural and probable consequence of the slanderous statement.

B. *The damage award was excessive.* We must determine whether the jury was within its bounds in determining that the natural and probable consequences of O'Malley's statements justified a verdict of $250,000. In determining whether the evidence supported the verdict, we must view the evidence in the light most favorable to the plaintiff.

We have previously stated that when "a verdict is so flagrantly excessive that it goes beyond the limits of fair compensation . . . and fails to do substantial justice between the parties, it is our duty to correct the error by granting a new trial or requir-

ing a remittitur on pain of the grant of a new trial." *Sallis v. Lamansky*, 420 N.W.2d 795, 800–01 (Iowa 1988); *see also, Ferris v. Riley*, 251 Iowa 400, 414, 101 N.W.2d 176, 184 (1960). In determining whether the damage award is excessive, we must abide by the principle that each case depends upon its own facts, and precedents are of little value. *Ferris*, 251 Iowa at 412, 101 N.W.2d at 183.

Rees owns and operates a mail service business in Des Moines. The fact that Rees owns his own business increases the potential for injury. The jury could find that the natural and probable consequences of statements challenging Rees' integrity are that customers will stop doing business with his company for fear that they will not be treated fairly. If customers are not confident in Rees' fairness, his business could suffer greatly.

We cannot agree, however, that Rees will suffer $250,000 in damages. Rees did not demonstrate that his reputation has been injured or that he has suffered any significant emotional distress. Further, he presented no evidence of any economic damages resulting from O'Malley's statements. Since Rees did not establish any special damages, the damage award must reflect the natural and probable consequences that would result from O'Malley's statements.

We are hesitant to disturb a jury award. However, there must be some reasonable limit on the awards that we will uphold. This award exceeds that limit. The natural and probable consequences of O'Malley's statements do not support a $250,000 damage award.

V. *Disposition.* We have previously held "that when liability has been established and when certain issues have been fairly tried and disposed of, but others require a new trial, it is not necessary to retry all the issues. The new trial may be limited to those issues concerning which there was error." *Barry v. State Surety Co.*, 261 Iowa 222, 230, 154 N.W.2d 97, 102 (1967). All issues in this case have been correctly resolved except the amount of damages, if any, to which Rees is entitled.

We conclude that this case should be remanded to the district court with instructions to retry the issue of damages.

Costs on appeal shall be taxed one-half to each party.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.