Harold Lee SPENCER, Appellee,

v.

Lyle D. SPENCER, Appellant.

No. 90–601.

Supreme Court of Iowa.

Dec. 24, 1991.

Rehearing Denied Feb. 19, 1992.

Victoria L. Herring, West Des Moines, for appellant.

Scott D. Hillstrom of Hillstrom Bale Anderson Young Polstein & Pearson, Ltd., Minneapolis, Minn., Gerald W. Magee, Jefferson, and Addison M. Parker of Dickinson, Throckmorton, Parker, Manheimer & Raife, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

Harold and Lyle Spencer are brothers. They, as well as their brother Dale and their sister Donna, are income beneficiaries of a testamentary trust created by their parents. Their mother Fern Spencer died

in 1944 and their father L.J. Spencer died in December 1972. The corpus of the Spencer trust is 800 acres of farmland. Lyle farmed 160 of the acres as a tenant of the trust. Harold's son, Paul, and Dale's son, Mike, are also tenants of the Spencer trust, each farming 320 acres.

Annual trust reports are filed with the court by the trustee. In June of 1988, Harold filed objections to the trustee's 1987 annual report. Lyle, acting pro se, filed a response to Harold's objections. In addition, Lyle wrote several letters to the trustee's attorney.

In December of 1988, Harold filed a civil libel suit against Lyle alleging the letters sent by Lyle contained defamatory statements. In his suit, Harold asked that he be awarded both compensatory and punitive damages. The case was tried to a jury. Both parties were represented by counsel. The jury awarded Harold $25,000 compensatory damages and $35,000 punitive damages. Lyle appeals from the final judgment entered upon the jury verdicts and from the court rulings which denied his motions for dismissal, a new trial, and for judgment notwithstanding the verdict.

Lyle, now represented by different counsel, argues that the district court erred in denying his motion for a directed verdict, in finding that statements in the letters were libel per se and in awarding compensatory and punitive damages. On appeal, the Iowa Court of Appeals, in a split decision, affirmed the district court's judgment. On further review, we affirm the decision of the court of appeals and the judgment of the district court.

### I. *Standard of Review.*

On appeal from a law action tried to a jury, we review for errors at law. Iowa R.App.P. 4. When reviewing a motion for a directed verdict, the appellate court must consider the evidence in a light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2).

### II. *Absolute Privilege.*

■ Iowa recognizes an absolute privilege (or immunity) from liability for defamation which takes place in a judicial proceeding. *Robinson v. Home Fire & Marine Ins. Co.*, 242 Iowa 1120, 49 N.W.2d 521, 524–27 (1951); Restatement (Second) of Torts § 586–88 (1977); W. Prosser & W. Keeton, *Prosser & Keeton on Torts* § 114, 115 (5th ed. 1984). A statement is privileged if made by one who has an interest in the subject matter to one who also has an interest in it or stands in such a relation that it is proper or reasonable for the writer to give the information. *Id.* However, the statement must have some relation to the issues in the judicial proceeding. *Id.*

■ Lyle moved for a directed verdict upon the grounds that the three letters written by him were absolutely privileged statements. The district court denied the motion for several reasons. First, the court concluded that the letters were not pleadings. The court found that Lyle was familiar with the manner in which to file pleadings and that the letters were not sufficiently akin to his previous pleadings made by him to the objections filed to the trustee's report. Second, the court found that copies of the letters were sent to persons no longer having, or never having, any interest in the Spencer trust proceedings. Finally, the court found that the libelous statements made in the letter were unrelated to the judicial proceeding. The district court properly overruled Lyle's motion for a directed verdict based upon a claim of absolute privilege.

■ An attorney or party is absolutely privileged to publish false and defamatory statements in judicial proceedings if (1) the statements are made preliminary to, or in the institution of, or during the course and as a part of a judicial proceeding, and (2) the content of the statement is reasonably pertinent or has some relation to the judicial proceeding. Restatement (Second) of Torts § 586–88 (1977).

■ The purpose of the absolute privilege is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings. *Beeck v. Kapalis*, 302 N.W.2d 90, 97 (Iowa 1981). This policy

which allows freedom of communication in judicial proceedings does not permit dissemination of defamatory statements outside of the judicial proceeding. While a defamatory pleading is privileged, that pleading cannot be a basis for dissemination of defamatory statements to the public or third parties not connected with the judicial proceeding. Otherwise, "to cause great harm and mischief a person need only file false and defamatory statements in a judicial pleading and then proceed to republish the defamation at will under the cloak of immunity." *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979).

■ The privilege is an affirmative defense which must be pled and proved. *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). Lyle failed to prove the libelous statements contained in the letters, which were addressed to the attorney for the Spencer trust and filed with the clerk of court and disseminated to other persons, were absolutely privileged.

III. *Per se Libel.*

■ Harold's petition alleged eleven statements contained in Lyle's letters of September 19, October 22, and October 29, 1988, were defamatory. In response to Harold's motion for adjudication of law points, the court determined that eight of the statements were libelous per se. The court instructed the jury that portions of the letters were libel per se:

Letter of September 19, 1988

Harold Spencer has a long history of hard work and many fine accomplishments. Unfortunately, this history is paved with greed, abuse & deceit.

Letter of October 22, 1988

You know that the above first two demands in Harold's latest petition are lies.

You know Harold cheated me as his hired man, cheated his landlady, skipped out on the sheriff, & efforts to stricken his brothers from the land.

Letter of October 29, 1988

Harold not only objected to me not paying cash rent, but also objected to me not storing beans at the farm and charging the trust for chemical application: both of which were lies. I have yet to see any retraction concerning these lies.

Remember who we're dealing with, a man who tries to steal from his brother, a man who did steal from his landlady, hides from the sheriff, tries to stricken his brothers from their birth place forever; the list is endless.

I never did plan to ask the trust for any re-payments until Harold started his last round of attacks on my farming operation; untruthful attacks.

For the sake of argument, let's say he stands behind his withdrawal of cash rent, what about the lies filed in court against me?

My first order of business will be to file a petition against Harold for damages when he filed false court documents against my farming operation and for causing unrest in the family trust.

■ Libel in Iowa includes malicious publications, expressed in writing, tending to injure the reputation of another. *Vinson*, 360 N.W.2d at 115. Libel per se means the statements are actionable in and of themselves without proof of malice, falsity or damage. *Id.* Words are libelous per se if they are of such a nature, whether true or not, that the court can presume as a matter of law that their publication will have libelous effect. *Id.* at 116. It is libel per se to make published statements accusing a person of being a liar, a cheater, or thief. W. Prosser & W. Keeton, *Prosser & Keeton on Torts* § 111. Lyle's accusations are libelous as a matter of law and the district court did not err in its ruling upon the motion for adjudication of law points or in its instruction to the jury.

The court instructed the jury as to other alleged libelous statements which did not rise to the level of libel per se. The instructions to the jury defined libel and explained the affirmative defenses of truth and of the qualified privilege claim made by Lyle. In answer to interrogatories the jury found Harold did not prove that Lyle

abused his qualified privilege as to the September 19 letter but that Lyle had abused his qualified privilege as to the October 22, and October 29 letters. The jury also found Lyle had not proven his affirmative defense of truth.

### IV. *Qualified Privilege.*

Lyle alleges the statements included in the three letters were protected by a qualified privilege. The court submitted the issue to the jury. The court's instructions included the definition of actual malice and an explanation of abuse of the privilege and its effect upon Lyle's claim for damages. Lyle made no objection to the instructions.

 Failure to timely object to an instruction not only waives the right to assert error on appeal, but also the instruction, right or wrong, becomes the law of the case. *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) (cited in *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 14 (Iowa 1990)).

 The jury was instructed that if Lyle did not act for the purpose of protecting the interest for the protection of which the privilege is given or if he knowingly published the defamatory matter to a person to whom its publication is not otherwise privileged, then he has abused the privilege and may be liable for the harm. A qualified privilege permits communication between parties with valid interests only and in such a manner that only those parties interested are the recipients of the communication. The qualified privilege by its very nature does not allow widespread or unrestricted communication. *Rees v. O'Malley*, 461 N.W.2d 833, 837 (Iowa 1990).

On appeal, Lyle urges there was no substantial evidence to submit the issue because of his qualified privilege. The jury found Lyle had abused the qualified privilege in his letters of October 22 and October 29. There is substantial evidence upon which the jury could find the privilege was abused. The copies of the October 22 letter were furnished to both Joe Crowley and the Jefferson State Bank. The Jefferson State Bank and the Brenton Bank at Jef-

ferson are the same bank. Harold is a customer of the bank and he finances his farm operation with them. The Brenton Bank has no interest in the Spencer trust and Lyle knew this. The Jefferson Bank had been removed as trustee for the Spencer trust in 1985. In the October 22 letter, Lyle suggests that he would also "try and file the letter with the Greene County Clerk" and if he must "take the whole issue public if I can." Joe Crowley had no interest in the Spencer trust. He was a friend and neighbor of Lyle's who had been a tenant on the 160–acre farm before Lyle became the tenant.

The October 29 letter reflected it was mailed to the Fort Dodge Messenger, State Representative Sue Mullins, and U.S. Senator Harkin. In the letter, Lyle acknowledges Harold had now decided to withdraw his objection. The letter expressed an intent to solicit help from the public. Lyle was not certain that he in fact mailed copies to all those listed. He testified he did not receive any response from Representative Mullins or Senator Harkin. A jury issue was raised as to whether they had received copies.

### V. *Damages.*

The court instructed the jury on general damages, loss of reputation, and physical and mental pain and suffering. It also submitted and instructed the jury as to punitive damages. Lyle's only challenge to the damage instructions was that there was no evidence to support the submission of punitive damages. After the jury's verdicts were returned, Lyle raised the additional argument that the verdicts were excessive.

 As to the award of compensatory damages, the court could award general damages as a result of the libelous per se statements. Copies of the letters were furnished to both persons having an interest in the trust proceedings and others. The court instructed the jurors:

One who has been determined as abusing the privilege may be liable only for the harm that is abusive or excessive (or

excessive), if it can be severable from the harm that would be properly privileged. When, however, the harm resulting from the abuse cannot be separated from that which has resulted from the proper exercise of the privilege, the effect of the abuse is to forfeit the qualified privilege and make the defendant subject to liability for the entire harm.

The instructions permitted recovery of past and future damages for physical and mental pain and suffering. Evidence was presented that Harold suffered from a moderately severe stress with some elements of depression. He was experiencing sleeping problems and was "not himself." The main cause of Harold's problems were the letters that were written in the fall of 1988 and which kept coming at a time when he could no longer take the stress and strain related to it. His treating physician testified that the main source of Harold's stress and strain were the letters and their contents that had been circulated in the community. A psychologist testified Harold was suffering from severe emotional distress and that the primary cause of Harold's emotional condition was the three letters and the impact that they had on him in terms of his family name and his reputation.

The record reflects that Lyle exhibited a conscious disregard for the rights of his brother Harold. Under the instruction submitted, there is ample evidence to permit the jury's award of punitive damages. The court instructed the jury that in fixing the amount of punitive damages, it could consider the nature of Lyle's conduct, the amount of damages which would punish and discourage like conduct by Lyle in view of his financial condition, and Harold's actual damages.

In *Rees*, we stated:

The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support....

The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise.

*Rees*, 461 N.W.2d at 839 (citing *Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975)). We find the jury's award of $25,000 compensatory and $35,000 punitive damages to be supported by the evidence and not excessive.

VI. *Disposition.*

Finding no error, we affirm the decision of the court of appeals and the judgment of the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.