Rebecca LARA, Appellee,

v.

Charles THOMAS, d/b/a Fort Dodge
Animal Hospital, Appellant.

No. 92–1936.

Supreme Court of Iowa.

Feb. 23, 1994.

778

Christopher R. Pose of Connolly, O'Malley, Lillis, Hansen & Olson, Des Moines, for appellant.

Richard M. LaJeunesse of Hansel & LaJeunesse, Des Moines, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Plaintiff brought suit against former employer claiming violations of state and federal wage payment laws and employment discrimination laws, tortious discharge, fraudulent misrepresentation, and slander. Following a jury trial, judgments were entered by the court awarding compensatory and punitive damages based on wage payment violations, tortious discharge, misrepresentation, and slander. Upon the filing of posttrial motions, the court modified the judgments. Defendant appeals and plaintiff cross-appeals.

On appeal defendant claims that (1) the trial court erred in recognizing a cause of action for tortious discharge in violation of public policy; (2) the damages awarded for tortious discharge and misrepresentation were duplicative and excessive; (3) the court erred in awarding punitive damages; (4) the defendant's statements were not slanderous per se and defendant established his defense of privilege; (5) the damages for slander were unsupported by the evidence; and (6) the attorney fee award was excessive.

Plaintiff cross-appeals claiming that the court erred in (1) determining the damages for tortious discharge and misrepresentation were duplicative; (2) failing to find defendant discriminated on the basis of sex; (3) concluding defendant did not misrepresent an agreement for increased wages and benefits; and (4) denying the full award of attorney fees. We affirm.

I. *Background.*

Rebecca Lara (Lara) was employed by the defendant, Charles Thomas d/b/a Fort Dodge Animal Hospital (Thomas), between April 1984 and March 24, 1990. At the commencement of her employment Lara's duties consisted of caring for animals in the kennels and helping at the reception desk. Later Lara learned and began to perform many of the duties of a veterinary assistant. While her duties increased, her wages did not. Lara was initially paid a wage of $3.00 per hour and received no overtime pay or other benefits. Her wages at all times were less than the minimum wage. From late 1989 until the termination of her employment in March of 1990, she received $3.35 per hour with no overtime pay or benefits. Other female employees were paid the same salary.

During the years Lara worked for Thomas, he employed just two men. Jim McGaffin, a veterinary technician, was paid $6.25 per hour with overtime pay and other benefits. A short-term employee, Matt Zabel, who broke horses and did odd jobs was paid over $4.00 per hour.

In 1987 Lara asked Thomas for an increase in wages and benefits. Lara alleged that in 1989 Thomas agreed to double her salary of $3.35 per hour and to provide her with insurance benefits and paid vacations. She also alleged he promised her continued employment until his retirement. According to Lara the increase was to begin January 1, 1990; however, Thomas failed to honor the agreement. Instead, she stated he reduced her hours in early January.

As a result of the reduction in work hours, Lara applied for partial unemployment benefits in early February. Shortly after she began receiving benefits, Lara claimed Thomas began committing various acts of retaliation. Thomas discharged Lara on March 24, 1990. After her termination Lara alleged the retaliation continued.

In July 1990 Lara filed this action claiming violations of the federal Fair Labor Stan-

dards Act and the Iowa wage payment laws, violations of the federal Equal Pay Act and the Iowa Unfair Employment Practices Act, fraudulent misrepresentation of wage obligations, misrepresentation of an agreement for higher wages and benefits, misrepresentation of an agreement for continued employment, tortious discharge for filing of an unemployment benefit claim, and damages from certain slanderous statements.

The jury found that Thomas had violated minimum wage and overtime laws and awarded Lara actual damages in the amount of the underpayment. The jury further found that Thomas misrepresented the conditions of employment and awarded compensatory damages as well as punitive damages of $7,500. On the tortious discharge claim the jury determined Thomas had wrongfully discharged Lara in violation of public policy and awarded $10,000 actual damages and $15,000 punitive damages. The jury also found in Lara's favor on the slander claim and awarded $10,000 general damages and $7,500 punitive damages. Finally, the jury rejected Lara's claims of equal pay violations and misrepresentation of an agreement for wages and benefits.

Thomas subsequently filed a motion for a judgment notwithstanding the verdict and a new trial. *See* Iowa R.Civ.P. 243, 244. In his motion Thomas raised a variety of challenges to the damage awards. He also challenged the recognition of a new cause of action for tortious discharge and the sufficiency of evidence on the misrepresentation and slander claims.

In its ruling on the motion the court held that the discharge of an employee based on the filing of a partial unemployment benefit claim was in violation of a recognized public policy. However, the court set aside the punitive damage award of $15,000 because retaliatory discharge for filing an unemployment claim had not been previously recognized in Iowa. The court determined the awards for tortious discharge and misrepresentation of employment conditions were duplicative and set aside the $6,500 award for actual damages on the misrepresentation claims. The court also upheld the jury

awards for general and punitive damages on the slander claims.

Following the court's order on Thomas' motion for a judgment n.o.v. and a new trial, Lara filed a motion to reconsider its order and a motion to amend its findings and conclusions and to modify its decree. *See* Iowa R.Civ.P. 179(b). The court rejected Lara's claims of equal pay violations and reaffirmed its conclusion that the damage awards for tortious discharge and fraudulent misrepresentation were duplicative. The court then entered its judgment, awarded Lara statutory liquidated damages equal to the wage underpayment, and attorney fees in the amount of $14,560. *See* Iowa Code §§ 91A.2(6), 91A.8 (1989); 29 U.S.C. § 216(b) (1965). Lara then filed a second motion to reconsider the amount of the attorney fee award and her claim of sex discrimination. The court overruled the motion and this appeal followed.

█ Our review is for correction of errors at law. Iowa R.App.P. 4. We view the evidence in the light most favorable to the jury's verdict. *Snipes v. Chicago Cent. & Pac. R.R. Co.*, 484 N.W.2d 162, 165 (Iowa 1992). In reviewing rulings made on a motion for judgment n.o.v. we simply ask if there is substantial evidence to generate a jury question. *Jackson v. State Bank of Wapello*, 488 N.W.2d 151, 155 (Iowa 1992). When ruling upon a motion for a new trial, the trial court has broad but not unlimited discretion in determining whether the verdict does substantial justice between the parties. *Cowan v. Flannery*, 461 N.W.2d 155, 157 (Iowa 1990).

## II. *Tortious Discharge.*

The jury concluded Thomas discharged Lara in retaliation for her claim for partial unemployment benefits. *See* Iowa Code § 96.15. On appeal Thomas argues that such a discharge, even if retaliatory, does not fall within the narrow exceptions to the employment at-will doctrine.

█ We have recognized two exceptions to the common law doctrine that an employer may discharge an at-will employee at any time for any reason or no reason. *French v.*

*Foods, Inc.,* 495 N.W.2d 768, 769–70 (Iowa 1993). This case involves one of the exceptions, tortious discharge in violation of public policy. An employer may be liable in tort for the retaliatory discharge of an employee when the discharge violates a clearly expressed public policy of this state. *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560–61 (Iowa 1988).

■ Under the public policy exception we have recognized causes of action for tortious discharge where an employer's retaliatory discharge would conflict with certain legislatively declared goals. In *Springer,* for example, we held the discharge of an employee who sought workers' compensation benefits violated public policy as set forth in the statutory scheme. *Id.; see also Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990) (retaliatory discharge violates public policy even if employer does not interfere with employee's receipt of workers' compensation benefits); *Wilcox v. Hy–Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa App.1990) (retaliatory discharge of employee who refused to take a polygraph test violates public policy).

■ In the area of employment security the legislature has declared that "[e]conomic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state." Iowa Code § 96.2. Iowa Code section 96.15(1) provides:

> Any agreement by an individual to waive, release, or commute the individual's rights to benefits or any other rights under this chapter shall be void. Any agreement by any individual in the employ of any person or concern to pay all or any portion of an employer's contributions ... shall be void. No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's contributions ... or require or accept any waiver of any right hereunder by any individual in the employer's employ. Any employer or officer or agent of an employer who violates any provision of this subsection shall, for each offense, be guilty of a serious misdemeanor.

The record contains substantial evidence from which the jury found that Thomas retaliated after Lara filed a claim for unemployment compensation. Lara testified that he first told Job Service she had quit, then he reduced her scheduled hours again. She also claimed he changed the locks on the office, scheduled her at odd times so she was unable to enter the clinic, and refused to speak with her at the office.

■ Employers cannot be permitted to intimidate "employees into foregoing the benefits to which they are entitled in order to keep their jobs." *Smith,* 464 N.W.2d at 686. To hold otherwise in this context would create a chilling effect by permitting an employer to indirectly force an employee to give up certain statutory rights. *Id.;* Iowa Code § 96.15(1). We hold ·that retaliatory discharge of an employee who files a claim for partial unemployment benefits "serves to frustrate a well-recognized and defined public policy of the state." *Springer,* 429 N.W.2d at 560; Iowa Code § 96.15.

■ We agree that punitive damages should not be awarded when a new cause of action for retaliatory discharge is recognized. *See Smith,* 464 N.W.2d at 687. We therefore affirm the court's order setting aside the award of $15,000 on the tortious discharge claim.

### III. *Fraudulent Misrepresentation—Punitive Damages.*

In her petition Lara alleged that Thomas committed three forms of fraudulent misrepresentation. The jury found for Lara on two of them and for Thomas on the third. First, she asserted Thomas intentionally misrepresented his obligations to comply with the minimum wage and overtime laws. Second, Lara asserted she was promised continued employment and would not be discharged without good cause. The jury found for Lara and awarded compensatory damages for misrepresentation of wages and continued employment. The jury also awarded $7,500 in punitive damages. Following consideration of the posttrial motions, the court set aside the $6,500 compensatory damage award because it was duplicative of the tortious dis-

charge award, but affirmed the punitive award on the misrepresentation claims.

### A. Punitive Damages

■ Thomas first argues the court erred in submitting the issue of punitive damages to the jury. Our review of the record reveals substantial evidence from which the jury could conclude that Thomas' actions amounted to a willful and wanton disregard for Lara's rights. *See* Iowa Code § 668A.1. Thomas further argues the awards of punitive damages were excessive and that they were the result of passion and prejudice on the part of the jury because the jury received evidence of his personal worth. We disagree. Evidence of a defendant's financial worth is one relevant factor for the jury to consider when setting a punitive damage award. *See Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 867 (Iowa 1994); *Nassen v. National States Ins. Co.*, 494 N.W.2d 231, 238–39 (Iowa 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). We find the punitive damages on the claims of misrepresentation are not so excessive that they demonstrate passion and prejudice. *Ryan v. Arneson*, 422 N.W.2d 491, 495–96 (Iowa 1988).

### B. Duplication of Damages

■ Lara argues that the award for actual damages for her claims based on misrepresentation was not duplicative of the tortious discharge award because they represented separate calculations for consecutive periods of time. Thomas urges the court correctly set aside the jury's award because the same theory of damages was argued in support of both theories of recovery.

■ The purpose of compensatory damages is to return an injured party to the party's original position. *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978). We have held that duplicate recovery or overlapping damages are to be avoided. *Nassen*, 494 N.W.2d at 236–37 (Iowa 1992); *Preferred Marketing v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 396 (Iowa 1990).

Lara sought damages on theories of tortious discharge in violation of public policy and for misrepresentation that she would not be discharged without good cause. Though she raised claims under different theories of liability, we believe the damages flowed from essentially a single action. To allow recovery on both theories would result in double recovery for the same consequences. Thus, we affirm the court's order to set aside the award of $6,500 on the misrepresentation of continued employment claim.

Thomas further urges that if the compensatory awards are duplicative on these claims, the court should have likewise found the punitive damage awards duplicative. Because the punitive award was set aside on the tortious discharge claim, there was no double recovery of punitive damages for Thomas' tortious misrepresentation.

### C. Misrepresentation of Wage Agreement

■ Lara's third claim of misrepresentation alleged Thomas unconditionally agreed to double her wages and provide her with benefits effective January 1, 1990. The jury answered special verdicts on this issue determining that a contract supported by consideration existed between the parties, but that the defendant was excused from performance of the contract. Lara urges the jury's special verdicts are inconsistent. An inconsistency between a special finding and a general verdict, however, is not problematic unless the conflict is irreconcilable. *Dutcher v. Lewis*, 221 N.W.2d 755, 761 (Iowa 1974).

We find the jury's answers to the special verdicts consistent with the evidence. At trial the defense argued that any agreement for an increase in Lara's compensation was conditioned on a merger between Thomas and another veterinarian. The merger did not occur. On cross-examination Lara conceded Thomas discussed such a merger, but testified that she did not interpret his promise of job security and higher compensation as contingent on the proposed merger. We conclude there was substantial evidence from which a jury could find Thomas did not misrepresent or breach this agreement.

## IV. *Equal Pay Claims.*

In another count of her petition Lara claimed Thomas violated both state and federal laws prohibiting discrimination between employees on the basis of sex. *See* 29 U.S.C. § 206(d)(1) (1978) (Equal Pay Act); Iowa Code § 601A.6(1)(a) (1989) (Unfair Employment Practices).[1] The jury found in favor of Thomas on the equal pay claims, and the court agreed overruling both Lara's rule 179(b) motion and her motion to reconsider. The court concluded Lara's abilities, duties, and responsibilities were not substantially similar to those of the male employees.

To make out a prima facie case under the federal Fair Labor Standards Act a plaintiff must show that an employer pays different wages to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...." 29 U.S.C. § 206(d)(1); *see also Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974); *Horner v. Mary Institute,* 613 F.2d 706, 713 (8th Cir. 1980). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show one of four exceptions applies. 29 U.S.C. § 206(d)(1); *Corning Glass Works,* 417 U.S. at 196–97, 94 S.Ct. at 2229, 41 L.Ed.2d at 10–11. Because we affirm the court's finding that Lara failed to demonstrate a prima facie case, we need not address the applicability of the exemptions.

Lara argued that she worked as a veterinary assistant or technician and performed many of the same duties as the male veterinary technician, McGaffin; yet he was paid $6.25 per hour plus benefits, compared to her wage of $3.00 to $3.35 per hour. Zabel was paid between $4.40 to $5.00 per hour. During her employment with Thomas none of the female employees received a higher wage than Lara. In defense Thomas pointed out that Lara and the male employees did not perform work that was substantially equal. Moreover, two former female employees testified that when they worked for Thomas as certified veterinary technicians they earned $7.00 to $10.00 per hour.

To determine whether Lara's work was substantially equal to that of the male employees we must look beyond the job title or description and examine the nature of the actual duties performed. *See, e.g., Epstein v. Secretary, United States Dept. of Treasury,* 739 F.2d 274, 277 (7th Cir.1984); *EEOC v. Hernando Bank, Inc.,* 724 F.2d 1188, 1196 (5th Cir.1984); *Horner,* 613 F.2d at 713. McGaffin was licensed in Nebraska as a veterinary technician. His two year training included coursework in pharmacology and parasitology. Although Lara performed a variety of laboratory tests on animal samples and assisted with vaccinations, surgeries, and x-rays, she had no formal education or training in the field of veterinary medicine. Further, McGaffin testified he performed additional duties at the clinic and he trained Lara and supervised much of her work. Thus, it is clear the work performed by Lara and McGaffin was not substantially equal in terms of skill or responsibility, and it differed in terms of the degree of accountability and the importance of the required duties. *See Epstein,* 739 F.2d at 277; *Horner,* 613 F.2d at 713.

Similarly, Zabel did not perform the same duties as Lara. Zabel was hired for a short period to break horses and to do odd jobs. He was a professional cowboy with extensive experience with horses.

For the same reasons, we conclude Lara has also failed to demonstrate a prima facie case of discrimination under Iowa law. *See Mowrey v. Iowa Civil Rights Comm'n,* 424 N.W.2d 764, 766 (Iowa App.1988); Iowa Code § 601A.6(1); 161 Iowa Admin.Code 8.51–8.54 (1991). There was substantial evidence to support the jury's verdict rejecting Lara's claims of unlawful sex discrimination.

## V. *Slander.*

Lara alleged Thomas made several slanderous statements about her both before and

---

1. The Code editors transferred chapter 601A to chapter 216 in the 1993 Code of Iowa. *See* Iowa Code § 216.6 (1993).

after her termination. The jury was instructed that truth is a complete defense to the slander claim. The court also instructed on the qualified privilege defense. The jury found Thomas had made, with malice, unprivileged statements on two occasions. On this claim they awarded Lara general damages of $10,000 and punitive damages of $7,500. The court overruled Thomas' motion for a judgment n.o.v. and a new trial on this issue. On appeal Thomas argues that the statements were not slanderous per se and, even if they were, the evidence supported his defense of qualified privilege. He further argues there was insufficient evidence to find malice and the damage awards were excessive.

 The law of defamation consists of the twin torts of libel and slander. W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 111, at 771 (5th ed. 1984) [hereinafter *Prosser & Keeton*]. The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name. *Id.* at 773. Slander generally consists of the oral publication of defamatory matter. *See* Restatement (Second) of Torts § 568 (1976).

At trial Lara and a coworker, Karen Markley, testified that approximately two months before Lara's discharge, Thomas asked Markley whether Lara had a drug or alcohol problem. Markley answered in the negative. Lara confronted Thomas when she learned of his inquiry, denied the allegations, and offered to take substance abuse tests at any time. At that point Thomas denied asking the question. During trial, however, he claimed Lara had become unreliable. After her termination Thomas contacted Lara's sister and again asked whether Lara had a drug problem.

 To prevail in an action for slander a plaintiff must prove either that the published statement was slanderous per se or that the publication caused actual harm to the plaintiff's reputation. *Prosser & Keeton* § 112, at 788; Restatement (Second) of Torts § 558. We note that whether a statement is slanderous is not determined by the form of the language used. *Kelly v. Iowa State Educ. Ass'n,* 372 N.W.2d 288, 295 (Iowa App. 1985) (statements of any nature may be libel-

ous); *see also* Gregory G. Sarno, Annotation, *Libel & Slander: Defamation by Question,* 53 A.L.R.4th 450 (1987).

 Statements which are actionable without proof of malice, falsity, or special harm fall within the category of slander "per se." *Spencer v. Spencer,* 479 N.W.2d 293, 296 (Iowa 1991); *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 115–16 (Iowa 1984). "An attack on the integrity and moral character of a party is [slanderous] per se." *Vinson,* 360 N.W.2d at 116; *see also Spencer,* 479 N.W.2d at 296. Slanderous imputations affecting a person in his or her business, trade, profession, or office are also actionable without proof of actual harm. *Prosser & Keeton* § 112, at 788, 790–93; Restatement (Second) of Torts §§ 570, 573.

 We conclude the jury could find Thomas' inquiries were actionable per se. The imputation of substance abuse clearly reflects on Lara's capacity or fitness to perform the duties of a veterinary assistant. *See* Restatement (Second) of Torts § 573 & cmt. c; 50 Am.Jur.2d *Libel & Slander* §§ 106–07, at 606–08; § 114, at 613–14 (1970).

Thomas contends that his inquiries were privileged. He testified he spoke out of concern for Lara and concern for his business interests. Although the jury found that the statement made to Lara's sister was privileged, they determined his statement to Markley was not only unprivileged but was made with malice.

> [A] qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which that person has a right or duty, if made to a person having a corresponding interest or duty in a manner and under circumstances fairly warranted by the occasion.

*Knudsen v. Chicago & North Western Transp. Co.,* 464 N.W.2d 439, 442 (Iowa 1990); *see also Rees v. O'Malley,* 461 N.W.2d 833, 837 (Iowa 1990). The burden is on the defendant to establish the existence of a qualified privilege. *Rees,* 461 N.W.2d at 837.

Thomas clearly had a valid interest in safeguarding his business reputation and the health of his clients' animals. Yet he may be subject to liability for slander if he exceeded or abused any privilege he possessed. *See* Restatement (Second) of Torts §§ 593–94, 599. We believe the jury could find Thomas' statement to Markley was not made in good faith. Moreover, the jury found Thomas acted out of malice. *Vinson*, 360 N.W.2d at 116–17 (privilege lost on proof of actual malice).

■ Additionally, Lara contended Thomas committed slander when he telephoned her new employer, after she commenced work, and told him she was unreliable. Because Thomas' remark reflected on Lara's character or fitness as an employee it could also constitute slander per se. *Vinson*, 360 N.W.2d at 115–16; Restatement (Second) of Torts §§ 573, 593.

■ Here Thomas countered by arguing truth and privilege. The jury concluded this statement was unprivileged and false. A statement is unprivileged if it is not made in good faith. *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 104 (Iowa 1985); Restatement (Second) of Torts § 595. The evidence established that Thomas did not merely respond to a direct inquiry of the employer, but rather took an affirmative step to contact the employer after he learned Lara was working there. We find the jury's verdict on the slander claims supported by substantial evidence.

■ Next, Thomas claims the damage awards for slander were excessive because there was no showing of actual damage to Lara's reputation. Slander per se, however, is actionable without proof of harm. *Rees*, 461 N.W.2d at 839; *Vinson*, 360 N.W.2d at 115–16. *See generally* Earl L. Kellett, Annotation, *Proof of Injury to Reputation as Prerequisite to Recovery of Damages in Defamation Action—Post Gertz Cases*, 36 A.L.R.4th 807 (1985). Yet damages may not be awarded based solely on the defamatory statements. *Rees*, 461 N.W.2d at 839. General damages are limited to the natural and probable consequences of the publication. *Id.* These may include recovery for emotional distress and resulting bodily harm. *Id.* at 839–40; *Kelly*, 372 N.W.2d at 300–01; Restatement (Second) of Torts § 623.

In this case Lara presented evidence on her good reputation, good work record, and the extent of publication. *Rees*, 461 N.W.2d at 839–40. She testified Thomas knew her mother was ill and that the allegations of substance abuse could be detrimental to her health. She claimed injury to her reputation, feelings, humiliation, and mental anguish. Under this record we conclude the $10,000 award for general damages is not excessive. *See, e.g., Spencer*, 479 N.W.2d at 297–98; *Kelly*, 372 N.W.2d at 301–02. Further, the punitive award of $7,500 was supported by evidence of actual malice.

## VI. *Attorney Fee Award.*

■ Finally, both parties argue the court erred in awarding Lara attorney fees in the amount of $14,560. Lara contends the court should increase the award to a minimum of $50,000, while Thomas urges further reduction. Lara submitted an affidavit of attorney fees for work related to the entire case totalling $56,664.10. The court awarded Lara approximately twenty-five percent of the fees sought.

■ In general, attorney fees will be awarded to a prevailing party only if pursuant to statute or written contractual provision. *Suss v. Schammel*, 375 N.W.2d 252, 256 (Iowa 1985). Among the claims Lara raised, several statutes provided for attorney fees to a successful plaintiff. *See* 29 U.S.C. § 216(b) (federal minimum wage, overtime, and equal pay provisions); Iowa Code § 91A.8 (state wage collection provisions); Iowa Code § 601A.15(8)(a) (unfair employment practices). Of these particular claims, Lara succeeded on the state and federal wage and overtime claims. She was awarded $10,469 in compensatory and liquidated damages.

The United States Supreme Court has examined this issue and noted that where a plaintiff prevails on only some of the claims for relief two questions must be asked.

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [the plaintiff] succeeded? Second,

did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51 (1983).

In *Hensley* the Court went on to explain that when determining whether a plaintiff's claims are separate and distinct or whether they are based on related legal theories the "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51–52. Because there is no precise formula for making such determinations, a court must necessarily exercise its discretion. *Id.* at 436–37 & n. 12, 103 S.Ct. at 1941 & n. 12, 76 L.Ed.2d at 52–53 & n. 12.

In setting the fee award the trial court considered a number of factors. These included the total recovery sought on the wage related claims, the actual recovery on those claims, the relationship between the fee awarded and the results obtained, the degree that other related claims contributed to success on these claims, and the trial counsel's experience. *See, e.g., Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 136–38 (3d Cir.1984). Because Lara was moderately successful on the wage collection claims the court awarded approximately twenty-five percent of the requested fees. We believe the court properly considered the extent to which Lara's nonwage collection claims interrelated and overlapped with the wage collection ones and the overall degree of success obtained. We affirm the award of $14,560 for attorney fees.

VII. *Conclusion.*

We have considered all issues raised on appeal and affirm the judgments entered by the trial court upon the verdicts as modified by the court's ruling on the posttrial motions. The costs of appeal are taxed eighty percent against Thomas, twenty percent against Lara.

**AFFIRMED.**